## STATE EX REL. ROWE, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 3,104.)

(Submitted December 2, 1911.   Decided December 18, 1911.)

[119 Pac. 1103.]

*Public Officers — Removal — Receiving Illegal Compensation— Police Judges—Statutes—Ignorance of Law—Intent—Accusation—Surplusage—Mandamus.*

Police Judges—Compensation—Statutes.

1.   The provision of section 3241, Revised Codes, fixing the compensation of police judges, is exclusive; such an officer is not, therefore, entitled to additional compensation for services performed as justice of the peace or committing magistrate in proceedings arising under the criminal law of the state.

Public Officers—Extra Duties—Power of Legislature—Compensation.

2.   The legislature may impose extra duties upon a public officer, which it is incumbent upon him to perform although additional compensation is not provided therefor.

Same—Removal—Statutory Construction.

3.   *Held,* that of sections 8992 and 9006, Revised Codes, both of which deal with the removal of certain public officers, the former is intended to apply to cases of willful or corrupt official misconduct or malfeasance, and the latter, *quasi* criminal in character, to those derelictions which are the result of incompetency or inattention to official duties.

Same—Ignorance of Law—Good Faith—Intent.

4.   Under section 9006 a public officer is removable for delinquency in demanding illegal fees, or in the performance of the duties enjoined by law, without reference to whether he acted in ignorance of the law, or in good faith and without a guilty intent, or under the erroneous advice of the attorney general.

Same—Criminal Law—Intent—When Immaterial.

5.   Where a statute plainly forbids an act to be done, a guilty intent in the person violating it need not be shown, but is conclusively implied by the law, unless from its language a purpose to require the existence of such an intent is discoverable.

Same—Removal—Collecting Illegal Fees—Accusation—Surplusage.

6.   Since under section 9006, Revised Codes, an officer is subject to removal for collecting illegal fees irrespective of a willful or corrupt motive, an allegation in a charge against a police judge that in violating the statute he acted willfully, intentionally and corruptly was surplusage.

Same—Removal—*Mandamus* to Compel Entry of Judgment.

7.   The district court may not be compelled by *mandamus* to enter an order ousting a public officer (a police judge) from office because of his admitted violation of section 9006, Revised Codes, prohibiting the collection of illegal fees, the proceeding looking to his removal being *quasi* criminal in character and the question of the guilt or innocence of the accused, one exclusively for the district judge.

Original application for *mandamus* by the state, on the relation of James H. Rowe, against the district court of Silver Bow County and others. Alternative writ set aside, and proceeding dismissed.

*Mr. Jesse B. Roote, Mr. T. F. Nolan,* and *Mr. A. A. Jackson,* submitted a brief and argued the cause orally in behalf of Relator.

*Mr. I. G. Denny, Mr. P. E. Geagan,* and *Mr. M. F. Canning,* for Respondents, submitted a brief; *Mr. Canning* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Application for writ of *mandamus.* On November 11, 1911, the relator herein, a resident and taxpayer of the city of Butte, presented to the district court of Silver Bow county a written accusation against Thomas J. Booher, police judge of said city, asking for his removal from office. The accusation, after alleging the corporate capacity of the city and the official character of said Booher, charges:

"Fourth. That on or about the 21st day of June, 1911, the said Thomas J. Booher did willfully, intentionally, and corruptly charge to the county of Silver Bow certain illegal fees for services rendered by the said Thomas J. Booher, in certain criminal actions and proceedings arising under the criminal laws of the state of Montana, police judge of the said city of Butte, when acting as a justice of the peace, a full and itemized statement of which said charges more fully appears from the account of the said Thomas J. Booher, filed in the office of the county clerk and recorder of Silver Bow county, Montana, a true copy of which is hereto attached and marked 'Exhibit No. 1,' and made a part hereof. That the said Thomas J. Booher did, on or about the 22d day of June, 1911, willfully and intentionally and corruptly collect from the said county of Silver

Bow illegal fees, amounting to the sum of $41.65, for the said services in this paragraph set out.

"Fifth.  That each and all of the fees charged and collected, as above set out, were and are illegal, and that the said Thomas J. Booher well knew the same to be illegal, and did willfully and intentionally and corruptly charge and collect the same."

On November 20th, in obedience to a citation issued to him, the said Booher appeared before Honorable Michael Donlan, the judge presiding in department 3 of said court, to which the proceeding was assigned under the rules distributing the business pending therein.  Judge Donlan being disqualified, the hearing was postponed until the following day.  On the following day, Judge Donlan entered an order postponing the hearing until November 25, and called in Honorable J. Miller Smith, one of the judges of the district court of Lewis and Clark county, to preside in his stead.  On November 25 and 27 the hearing was had before Judge Smith; the accused having entered his plea of not guilty, both orally and in writing.  It was admitted by the accused that he had demanded and received from the county of Silver Bow, for services rendered during the month of May, 1911, the sum of $41.65, as charged, upon claims presented by him, in his official capacity as police judge of the city of Butte, to the board of commissioners of the county, as compensation which he deemed to be due him for his services as justice of the peace in proceedings arising under the criminal laws of the state.  It was admitted by counsel for the relator that the claims were presented to the commissioners by the accused in good faith, in the belief that under the provisions of law applicable the board of county commissioners was authorized to allow them, and that he was entitled to collect them from the county for the services so rendered; that theretofore the predecessor of the present board of commissioners, having been advised by Hon. James Donovan, at that time attorney general of the state, that a police judge, when acting in the capacity of justice of the peace or committing magistrate, was entitled to compensation from the county for his services in that behalf, had made an order allowing the police judge of the city of Butte

the sum of $500 per year for such services; that such order, if it had any validity, was in full force and effect at the time the accused was allowed and collected the said claims; and that at said time he had knowledge of the advice so given to the board by the attorney general.   Upon these admissions, counsel for the relator demanded of the court judgment removing the accused from his office, and for costs, for that, he having admitted that he had demanded and received from the county compensation to which he was not entitled, the court was without authority to adjudge otherwise, notwithstanding the accused had acted in good faith and in an honest belief that he was entitled to such compensation.   The court, however, refused to so adjudge, and ordered the proceeding dismissed.   Thereupon this application was made to compel the court, through Judge Smith, to set aside the order of dismissal and order judgment as demanded.   At the hearing in this court, counsel for defendants interposed a motion to quash the alternative writ and dismiss the proceeding, on the ground that upon the admitted facts the relator is not entitled to any relief.

The sections of the statute invoked by the proceedings in the district court are the following:

"Sec. 3241.   The annual salary and compensation of police judges must be fixed by ordinance, and in a city of the first class must not exceed, for all services rendered, two thousand dollars; in a city of the second class, must not exceed one thousand dollars, and in a city of the third class must not exceed four hundred dollars, and, in addition, a police judge is entitled to receive in all civil cases the fees which are now, or may hereafter be, allowed justices of the peace.   In all criminal actions or proceedings arising under the criminal laws of the state when acting as a justice of the peace or committing magistrate, he must receive no compensation whatever."

"Sec. 9006.   When an accusation in writing, verified by the oath of any person, is presented in a district court, alleging that any officer within the jurisdiction of the court has been guilty of charging and collecting illegal fees for services rendered, or to be rendered in his office, or has refused or neglected to per-

form the official duties pertaining to his office, the court must cite the party charged to appear before the court at a time not more than ten nor less than five days from the time the accusation was presented; and on that day, or some other subsequent day not more than twenty days from that on which the accusation was presented, must proceed to hear, in a summary manner, the accusation and evidence offered in support of the same, and the answer and evidence offered by the party accused; and if, on such hearing, it appears that the charge is sustained, the court must enter a judgment that the party accused be deprived of his office, and for such costs as are allowed in civil cases."

Some contention was made at the hearing in this court that, in view of the provisions of section 3176, Revised Codes, which fixes a schedule of fees which justices of the peace may charge in criminal cases and proceedings, a police judge, who is, with some exceptions, clothed with concurrent criminal jurisdiction (Rev. Codes, secs. 3297, 3300), may demand and receive the compensation to which justices of the peace are entitled. At least, it is said, the various provisions involve an ambiguity which requires a construction of them, in order to determine what compensation a police judge is entitled to under them; and that, since this is so, and since the accused claimed in good faith and was allowed the compensation received by him under the advice of the attorney general, he is not subject to the penalty prescribed by the statute. There is no ambiguity in these provisions. Sections 3297 and 3300 merely confer jurisdiction upon the police court or judge in the cases and proceedings enumerated. Notwithstanding the language, "when acting as justice of the peace or committing magistrate," loosely used in section 3241, when this section is read in connection with sections 3297 and 3300, *supra,* it is entirely clear that in exercising the jurisdiction conferred by the latter the police judge does not abdicate his office as such, and act in a different official capacity. He performs all acts which he may perform in this behalf by virtue of his office as police judge, and not otherwise. The compensation to which he is entitled is provided for in section 3241. No [1] reference to the subject is found elsewhere in the Codes.

This provision is therefore exclusive—made so by the language found in the last clause, which seems to have been inserted purposely to prevent any misunderstanding as to what, and only what, compensation he may claim, not only from the municipality, but also from any other source.

It is competent for the legislature to exact extra duties of a [2] public officer without providing compensation for them; but it is none the less incumbent upon the officer to perform the duties so prescribed. (*State ex rel. Kranich* v. *Supple,* 22 Mont. 184, 56 Pac. 20; Mechem on Public Officers, 855 *et seq.;* 29 Cyc. 1422–1433.) Therefore the accused had no right to demand, nor had the board of commissioners the power to allow, compensation for the services in question.

The question then arises: Do the facts admitted bring the accused within the penalty prescribed by section 9006, *supra,* it appearing that both he and the board acted in good faith under the advice of the attorney general? This query must be answered in the affirmative. Under the Constitution, the governor and other state and judicial officers, except justices of the peace, are removable from office by impeachment. (Constitution, Art. V, sec. 17.) "All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law." (*Id.*, sec. 18.) In pursuance of this provision, the legislature enacted [3] section 8992 and section 9006, *supra.* The former provides for the removal, upon accusation presented by a grand jury, charging willful or corrupt misconduct or malfeasance in office. Under the latter the proceeding may be initiated by any person, upon a charge that an officer has been guilty of collecting illegal fees for services rendered or to be rendered, or has refused or neglected to perform the duties pertaining to his office. A comparison of these two provisions leads to the conclusion that the legislature intended the first to apply to those cases only in which the accused has been guilty of *willful* or *corrupt* misconduct or malfeasance; while the latter was intended to apply to those derelictions which are the result of incompetency or inattention to official duties. It is apparent that under the lat-

ter section the officer is subject to removal for delinquency, either [4] in demanding excessive fees, or in the performance of the duties enjoined by law, without reference to whether he acts willfully and corruptly or not. It proceeds upon the assumption that the officer must know and perform the duties enjoined upon him by law, and demand only such compensation for his services as the law has prescribed. The motives governing his conduct are not material, because they are not declared so by statute. He must act at his peril; otherwise this section is without effective purpose. It is clear and unambiguous in its terms, and is not open to any other construction. It is evident that the legislature intended to make this proceeding a *quasi*-criminal prosecution, both because the section is found in the Penal Code, and because it imposes as a punishment removal from office. (*Kilburn* v. *Law,* 111 Cal. 237, 43 Pac. 615; *In re Curtis,* 108 Cal. 661, 41 Pac. 793.) But it does not therefore follow that a sinister purpose is a necessary ingredient of the offense thus created. Ignorance of the law cannot be urged as an excuse for a violation of it. Nor is good faith, under such circumstances, any justification or excuse. (*Leggatt* v. *Prideaux,* 16 Mont. 205, 50 Am. St. Rep. 498, 40 Pac. 377; *State* v. *Examination and Trial Board,* 43 Mont. 389, 117 Pac. 77.) "The rule rests on public necessity; the welfare of society and the safety of the state depend upon its enforcement. If a person accused of a crime could shield himself behind the defense that he was ignorant of the law which he violated, immunity from punishment would in most cases result. No system of criminal justice could be sustained with such an element in it to obstruct the course of its administration. The plea would be universally made, and would lead to interminable questions incapable of solution. Was the defendant in fact ignorant of the law? Was his ignorance of the law excusable? The denser the ignorance, the greater would be the exemption from liability." (*People* v. *O'Brien,* 96 Cal. 171, 31 Pac. 45.)

When an act is in general terms made indictable, a criminal [5] intent need not be shown, unless from the language of the law applicable a purpose to require the existence of such an

intent can be discovered.   (*Halsted* v. *State,* 41 N. J. L. 552, 32 Am. Rep. 247.)   In *State* v. *McBrayer,* 98 N. C. 619, 2 S. E. 755, in considering a statute prohibiting the sale of intoxicating liquor, the court said: "It is a mistaken notion that positive, willful intent, as distinguished from a mere intent, to violate the criminal law is an essential ingredient in every criminal offense, and that where there is the absence of such intent there is no offense; this is especially so as to statutory offenses.   When the statute plainly forbids an act to be done, and it is done by some person, the law implies conclusively the guilty intent, although the offender was honestly mistaken as to the meaning of the law he violates.   When the language is plain and positive, and the offense is not made to depend upon the positive, willful intent and purpose, nothing is left to interpretation.   It would be a very dangerous exercise of the power of courts to interpret positive statutes so as, in effect, to interpolate into them exceptive provisions.   If the court could do so, there would be scarcely a limit beyond which it might not go, and thus make, instead of interpret, the law."

In *Coates* v. *Wallace,* 17 Serg. & R. (Pa.) 75, the court, through Chief Justice Gibson, stated the rule thus: "Ignorance of the law will not excuse in any case; and this principle is applicable, and with irresistible force, to the case of an officer selected for his capacity, and in whom ignorance is unpardonable.   The very acceptance of the office carries with it an assertion of a sufficient share of intelligence to enable the party to follow a guide provided for him, with an unusual attention to clearness and precision.   On any other principle, a conviction would seldom take place, even in cases of the most flagrant abuse; for pretexts would never be wanting.   Sound policy, therefore, requires that the officer should be held to act at his peril, and we are of opinion that the absence of a corrupt motive, or the existence of an agreement by the party injured, furnishes no justification for doing what the law forbids."   This case and *Leggatt* v. *Prideaux, supra,* were both civil actions to recover penalties from public officers for the collection of illegal fees, but the principle involved in each of them is none the less

applicable here.   To the same effect are the following cases:
*Beckham* v. *Nacke,* 56 Mo. 546; *Roberge* v. *Burnham,* 124 Mass.
277; *Commonwealth* v. *Weiss,* 139 Pa. 247, 23 Am. St. Rep.
182, 21 Atl. 10, 11 L. R. A. 530; *State* v. *Gould,* 40 Iowa, 372;
*Gardner* v. *People,* 62 N. Y. 299.   Though in every public of-
fense there must exist a union of act and intent (Rev. Codes,
sec. 8112), in statutory offenses, such as this, the intent is con-
clusively presumed, when it is shown that the statute has been
violated.

The ignorance of the accused being, therefore, no excuse or
justification, the fact that he was acting upon the advice given
to the board by the attorney general does not put him in any
more favorable position.   If, as we have said, he must act at
[6]   his peril, that he proceeded upon the advice of others
did not relieve him from responsibility; and, though the charge
alleges that he acted willfully, intentionally, and corruptly, this
characterization of his conduct was wholly unnecessary, and
should have been treated as surplusage, not casting upon the
relator the burden of showing any other fact than that the
accused had transgressed the statute.   The court should have
granted a judgment removing him from office.

This brings us to the question whether *mandamus* will issue
to compel the entry of a judgment of removal.   In civil cases
circumstances often arise calling for the issuance of *mandamus*
to a judicial officer or tribunal to put into motion the power
of such officer or tribunal, or to compel the performance of
an act which, being ministerial in character, does not involve
the exercise of judicial discretion.   But the writ will not in
any case direct how an officer or tribunal shall act, or to what
effect they shall exercise their power.   Even when the proper
performance of an act, ministerial in character, involves discre-
tion, the writ will not direct a decision in a particular way.
(Spelling on Injunction and Extraordinary Remedies, secs. 1394,
1395.)   In the notes this author cites many illustrative cases.
The following, decided by this court, are pertinent: *State ex
rel. Independent Pub. Co.* v. *Smith,* 23 Mont. 329, 58 Pac. 867;
*Raleigh* v. *District Court,* 24 Mont. 306, 81 Am. St. Rep. 431,

61 Pac. 991; *State ex rel. Northern Pac. Ry. Co.* v. *Loud,* 24
Mont. 428, 62 Pac. 497; *State ex rel. Dempsey* v. *District Court,*
24 Mont. 566, 63 Pac. 389; *Montana Ore Pur. Co.* v. *Lindsay,*
25 Mont. 24, 63 Pac. 715; *State ex rel. King* v. *District Court,*
25 Mont. 202, 64 Pac. 352; *State ex rel. Finlen* v. *District
Court,* 26 Mont. 372, 68 Pac. 465; *State ex rel. Davis* v. *District
Court,* 30 Mont. 8, 75 Pac. 516; *State ex rel. Montana Central
Ry. Co.* v. *District Court,* 32 Mont. 37, 79 Pac. 546; *State ex rel.
Stiefel* v. *District Court,* 37 Mont. 298, 96 Pac. 337; *State ex rel.
Happel* v. *District Court,* 38 Mont. 166, 129 Am. St. Rep. 636,
99 Pac. 291. In none of these cases has the court, by virtue
of the writ, undertaken to control judicial action; on the con-
trary, an examination of them will show that it has consistently
refused to do so.

But though, as has been said, the violation of the statute
by the accused was established by uncontroverted evidence,
**[7]** nevertheless, if it be conceded that the writ would go in
a civil proceeding presenting identical conditions, it ought not to
go in this case. This is a *quasi*-criminal proceeding. The rules ap-
plicable to civil cases do not apply. Upon a plea of not guilty,
the defendant in a criminal case is entitled to have the verdict
of a jury upon the question of his guilt or innocence, however
clear and unimpeached or free from suspicion the evidence may
be. (*State* v. *Koch,* 33 Mont. 490, 85 Pac. 272.) There is al-
ways a presumption of his innocence, and, though the court
may direct a verdict in his favor, it cannot direct a verdict of
guilty, nor go further than to tell the jury that if they believe
the evidence they may find him guilty; and, if the jury ac-
quits him through a clear disregard of the evidence, the court
may not set aside the verdict and grant a new trial. (*Id.*)
In our opinion, the same rule applies in this proceeding, though
it is statutory and summary, and the defendant is not entitled
to a trial by jury, as is one accused under section 8992, *supra.*
The statute lodges the power to determine the question of his
guilt or innocence exclusively in the judge. It does not provide
for an appeal by the state, or any other mode of review, for
error or mistake in his conclusion. Therefore, by analogy and

upon principle, his judgment may not be controlled or coerced by this court.

The relator relies with confidence upon *State ex rel. Davis* v. *District Court, supra,* and *Hensley* v. *Superior Court,* 111 Cal. 541, 44 Pac. 232. These were both civil cases. Besides, the facts out of which each of them arose present a case in which the defendant court, in refusing to make the particular order demanded, refused to perform a plain legal duty which involved no discretion whatever.

The alternative writ is set aside, and the proceeding is dismissed.

*Dismissed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.