STATE, RESPONDENT, *v.* DRISCOLL, SHERIFF, APPELLANT.

(No. 3,569.)

(Submitted October 27, 1914. Decided November 6, 1914.)

[144 Pac. 153.]

*Officers — Sheriffs — Removal—Neglect of Duty—Accusation— Sufficiency — Justification — Matter of Defense — Trial by Court—Evidence—Erroneous Admission—Harmless Error— Presumptions.*

Sheriffs—Removal—Neglect of Duty—Accusation—Sufficiency.

1.   An accusation looking to the removal of a sheriff from office because of neglect of official duty—an offense public in its nature under section 8107, Rev. Codes—which was entitled in the name of the state "on the accusation" of certain persons, was sufficient in form, where from the whole body of the document it was apparent that a public proceeding and not a private action was initiated by it.

[As to liability of sheriffs for misperformance and nonperformance of official duties, see note in 95 Am. St. Rep. 96. As to failure to enforce laws as ground for removal of public officer, see note in Ann. Cas. 1913D, 32.]

Same—Accusation—Contents.

2.   An accusation of the character of the above need not allege that the accuser is an elector of the county in which accused holds office.

Same—Accusation—Sufficiency.

3.   To charge the existence of a riot for failure to suppress which defendant sheriff was sought to be removed from office, it was not

necessary to employ the language of section 8565, Revised Codes, defining a riot; a statement of facts from which its existence was inferable being sufficient.

Same—Accusation—Sufficiency.

4.  The accusation above referred to was not rendered objectionable because specific crimes therein mentioned as having been committed during the riot were not described with the particularity required in an indictment or information against the perpetrators thereof, their commission having been incidental only and in nowise affecting the duty of the sheriff in the premises.

Same—Accusation—Justification—Matter of Defense.

5.  Circumstances tending to justify or excuse the conduct of accused for which he was sought to be removed from office were matters of defense, which it was not necessary to anticipate in the accusation.

Same—Accusation—Verbal Misprision—Immateriality.

6.  Where it was fairly deducible from a paragraph of an accusation charging official delinquency on the part of a sheriff that it was intended to allege that the accused had failed to serve bench warrants issued out of the district court in the regular way upon the order of the judge, a verbal misprision to the effect that they were issued by the judge instead of by the clerk, may not be held to have rendered that portion of the accusation valueless.

Trial by Court—Evidence—Erroneous Admission—Presumptions.

7.  Where a trial is had by the court without the aid of a jury, the presumption obtains that, if incompetent testimony was admitted, it was disregarded by the court in arriving at its conclusion.

*Appeal from District Court, Silver Bow County; Roy E. Ayres, Judge of the Tenth Judicial District, presiding.*

PROCEEDING by the state, on the accusation of James H. Rowe, Louis Dreibelbis, W. M. Tuohy and A. R. Currie, to remove Tim Driscoll from the office of sheriff of Silver Bow county. From a judgment of removal and from an order denying him a new trial, defendant appeals.    Affirmed.

*Mr. J. E. Healy* and *Messrs. Walker & Walker,* for Appellant, submitted a brief; *Mr. Frank Walker* argued the cause orally.

*Messrs. Peter Breen* and *J. J. McCaffery,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

On the 10th day of September, 1914, an accusation in writing was filed in the district court of Silver Bow county by James H. Rowe and three other persons, alleging that Timothy Driscoll, the sheriff of said county, had refused and neglected to perform

the official duties of his office, and praying for his removal on account thereof. A citation having been issued and served, Mr. Driscoll appeared and by his attorneys moved to quash the citation, and also demurred to the accusation on various grounds, which motion and demurrer being overruled, he made answer denying the material averments of the accusation. Thereafter the cause came on for trial before the court sitting without a jury, Honorable Roy E. Ayres presiding, and the court, after hearing the evidence offered both in support of and against the accusation, found Mr. Driscoll to be guilty and entered judgment depriving him of his office and declaring said office to be vacant. A motion for new trial was made and denied. Whereupon Mr. Driscoll appealed to this court asking that said cause, on account of the public character thereof, be accorded prompt hearing and determination.

As grounds of reversal it is urged that the accusation is insufficient in form and substance, and that the findings and judgment are not warranted by the evidence.

1. (a) The first attack upon the accusation is that since the [1] official neglect sought to be charged is a public offense (sec. 8107, Rev. Codes), and since the present proceeding is a prosecution therefor, it must be conducted in the name and by the authority of the state. (Constitution, Art. VIII, sec. 27.) Assuming this to be true, we fail to observe any substantial departure from the requirements stated. The proceeding is entitled in the name of the state of Montana, and that fact is not avoided because the title also reveals the names of the accusers. From the whole body of the accusation it is apparent that it inaugurates, not a private action, but a public proceeding authorized by both the Constitution (Art. V, sec. 18) and the Codes (sec. 9006). It was prosecuted in a court of general jurisdiction and the name of the county attorney of Silver Bow county appears as counsel for such prosecution.

(b) Fault is found with the accusation because it does not [2] allege the accusers to be electors of Silver Bow county. By the constitutional provision above referred to (sec. 18, Art.

V), a sheriff guilty of misconduct or malfeasance is made removable from office "in such manner as may be provided by law." One of the methods provided by law is a summary proceeding like the present, initiated upon a written accusation verified by the oath of "any person." (Rev. Codes, sec. 9006; *State ex rel. Rowe* v. *District Court,* 44 Mont. 318, 323, Ann. Cas. 1913B, 396, 119 Pac. 1103.) If the meaning of this language could be restricted to the electorate, it could as well be restricted to that portion of the electorate who participated in the election of the officer whose conduct is in question, or even to that portion of the electorate by whose suffrages he had become such officer. We know of no canon of construction nor any consideration of public policy to warrant any such conclusion.

(c) The principal ground of complaint, however, is that the accusation does not state facts sufficient to constitute a public offense. The substance of the allegations upon which findings appear to have been based is as follows:

"5. That on the 13th day of June, 1914, large numbers of persons, many of them bearing arms, were unlawfully and riotously assembled on the principal streets of the city of Butte, particularly on Main, Broadway and Park streets, in said county of Silver Bow, Montana, and that the said Tim Driscoll at said time was advised of the fact that said persons were unlawfully and riotously assembled, and that they were engaged in riotous conduct, and were destroying property and assaulting residents of Silver Bow county; and that in said riot that building known as Miners' Union Hall, in Butte, Silver Bow county, Montana, was wrecked and the furniture and other property contained therein was wrongfully and unlawfully destroyed at the hands of the said riotous assembly; and that certain safe, belonging to Butte Miners' Union No. 1, Western Federation of Miners, was wrongfully and unlawfully removed from said hall to the outskirts of the city of Butte, in Silver Bow county, Montana, in the presence of said Tim Driscoll, while acting as sheriff, and was wrongfully and unlawfully, at the hands of said riotous assembly, broken open by explosives, and the con-

49 Mont.—36

tents thereof, consisting of money to the amount of over one thousand dollars, and other valuable property, were feloniously stolen and carried away by persons constituting a part of said riotous assembly, and that though said riotous assembly continued in the acts above mentioned for a period of more than eight hours, the said Tim Driscoll did not go among the persons assembled, or as near them as possible, and command them, in the name of the state, to immediately disperse, nor did he make any arrests, or offer any physical resistance to the said acts of said riotous assembly, hereinbefore mentioned.

"7. That on the 23d day of June, 1914, large numbers of persons, many of them bearing arms, were unlawfully and riotously assembled on Main street, within the limits of the city of Butte, Silver Bow county, Montana, and that the said Tim Driscoll at said time was advised of the fact that said persons were unlawfully and riotously assembled, and that they were engaged in riotous conduct, destroying property, discharging firearms and explosives, and committing robbery, and that in said riot, and as a result thereof, one man, to-wit, Ernest J. Noy, was shot and killed and two others were wounded, and that the building known as the Butte Miners' Union Hall, and other property in the neighborhood of said hall and within said county of Silver Bow, was wrongfully and unlawfully destroyed by explosives at the hands of said riotous assembly, and that though the said Tim Driscoll, as sheriff of Silver Bow county, Montana, was advised of said riotous assembly and their conduct, as hereinbefore set forth, he, the said Tim Driscoll, did not go among the persons assembled, or as near them as possible, and command them, in the name of the state, to immediately disperse and did not arrest or apprehend any of the parties participating in said riots or robbery, although the said rioters and unlawful acts continued during a period of more than five hours.

"8. That on the 27th day of August, 1914, in the city of Butte, said county of Silver Bow, a large number of persons, armed and unarmed, were unlawfully and riotously assembled

in said county of Silver Bow aforesaid, and that certain persons, so unlawfully and riotously assembled, did then and there, by force, seize, take and have in their custody Pat Towey, Martin Harkins and Martin Glackin and many other persons, all residents of the city of Butte, in the county of Silver Bow, State of Montana; that the said persons did then and there, by force and violence, unlawfully and wrongfully detain said persons and require them to march through the streets of the said city of Butte to a vacant lot within the limits of said city, and near the center of said city of Butte, and then and there forcibly, unlawfully and wrongfully hold and detain said persons, and did then and there conduct publicly, and in the presence of said sheriff, an alleged trial of said persons before the members of the Butte Mine Workers Union and other persons, so unlawfully and riotously assembled, and did then and there in the presence of said Tim Driscoll, forcibly, violently, wrongfully and unlawfully cause the said Pat Towey, Martin Harkins and Martin Glackin, to be kidnaped, driven and deported from the city of Butte, and did then and there advise and require the said Towey, Harkins and Glackin never again to return to the city of Butte, and state that if they did "they would get the rope," meaning thereby that they would be hanged. That though the said Tim Driscoll, as sheriff of said Silver Bow county, Montana, was then and there, and ever since has been, advised of said unlawful and riotous assembly last mentioned, and was present at said time when the said Towey, Harkins and Glackin were being unlawfully held and detained, he, the said Tim Driscoll, failed, neglected and refused to perform his official duty as sheriff, and he failed, neglected and refused to rescue the said Towey, Harkins and Glackin, or to take any action whatsoever in their behalf, or to make any arrests on account of their unlawful detention, and the said Tim Driscoll failed, neglected and refused to go among said persons assembled, or as near them as possible, or to command them, in the name of the state, to immediately disperse and that he has, ever since the said 27th day of August, 1914, failed, neglected and refused to

cause the arrest and punishment of any of the persons engaged in such unlawful conduct.

"10. That on or about the 29th day of August, 1914, informations were filed in the district court of the second judicial district of the state of Montana, charging Michael McDonald, J. E. Bradley, Joe Shannon, James Chapman and William O'Brien with a felony, to-wit, kidnaping; that on said date bench warrants for the arrest of the said Michael McDonald, J. E. Bradley, Joe Shannon, James Chapman and William O'Brien were duly issued by the judge of said court and placed in the hands of said Tim Driscoll, as such sheriff, for service; that the said Tim Driscoll failed and neglected to serve said warrants or any of them, or to arrest the said Michael McDonald, J. E. Bradley, Joe Shannon, James Chapman and William O'Brien or either of them, each and all of which persons were, at the time of the receipt of said warrants by said sheriff, and for several days thereafter, openly about the streets and other public places in the city of Butte, and their whereabouts known to said sheriff, and though the said Michael McDonald did openly and publicly, at a mass meeting in the streets of the city of Butte, Silver Bow county, Montana, defy the said sheriff to arrest him, and openly declared that he would kill the first man who laid hands on him to place him under arrest; that the said Tim Driscoll, though fully advised of the conduct and actions of the said Michael McDonald, above mentioned, did not arrest or attempt to arrest or cause the arrest of the said Michael McDonald."

To each of the foregoing paragraphs special and particular objections are made, the general character of which may be illustrated by those addressed to paragraph 5: It is argued that this paragraph is valueless because "the material allegations which our statute says go to make a riot are not set forth"; because "complainants merely allege that the safe was wrongfully and unlawfully broken open by explosives, which is not an allegation of any crime having been committed but is consonant with law and order so far as criminal intent is con-

cerned''; because it is not alleged that the appellant ''had opportunity, after being advised, to present himself at the scene of trouble and either quell the disturbance and compel the crowd to disperse or  *  *  *  that he had the physical power to quell the riotous assembly''; and because it is not alleged that the appellant had knowledge of the fact that property was being stolen by the persons constituting part of the riotous assembly or that he was present thereat or had the physical power to prevent it.

These criticisms are unavailing.  Our statute defines riot to [3, 4] be ''any use of force or violence, disturbing the public peace, or any threats to use force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law.'' (Rev. Codes, sec. 8565.)  If we grant that in charging the sheriff with a neglect of his duty to suppress a riot or to arrest rioters, the existence of the riot cannot be averred in general terms but that the constituents thereof must be set forth, it does not follow that this must be done in the language of the statute.  If the facts are alleged which show the existence of a riot, it is enough and it would be ridiculous to say that the existence of a riot is not alleged when it is specifically stated that ''large numbers of persons, many of them bearing arms, were unlawfully and riotously assembled on the principal streets of the city of Butte, *  *  *  destroying property and assaulting residents.''  So, too, the fact that in the course of such a riot other specific crimes were committed is incidental; it in nowise affects the duty of the sheriff to suppress the riot, and failure to describe such crimes with the particularity requisite in an indictment or information against the perpetrators thereof cannot be of vital consequence to this accusation.

A riot existing to the knowledge of the sheriff, it becomes his duty to suppress it (Rev. Codes, sec. 3010) ; he must command the rioters to disperse (Rev. Codes, sec. 8962) ; he must arrest them if they do not disperse, and for that purpose he may command the aid of all persons present or within the

county (Rev. Codes, sec. 8963). The duty thus imposed is absolute, and to charge that the riotous assembly occurred with the knowledge of the sheriff, that it continued for eight hours, that it was accompanied by disorder and destruction of property, that it was not dispersed, that participants therein were not arrested, and that no physical resistance was offered to its acts, is to charge official delinquency upon the part of that [5] officer; and any circumstances there might be tending to justify or excuse his conduct are matters of defense which need not be anticipated in the accusation. Such, in principle, at least, is the effect of the following cases: *State ex rel. Rowe* v. *District Court, supra; State ex rel. Ryan* v. *Board of Aldermen,* 45 Mont. 188, 122 Pac. 569; *People ex rel. Eakins* v. *Roosevelt,* 44 N. Y. Supp. 1003; *Coffey* v. *Superior Court,* 147 Cal. 525, 82 Pac. 75; *Moulton* v. *Scully* (Me.), 89 Atl. 944; *Scougale* v. *Sweet,* 124 Mich. 311, 82 N. W. 1061.

The same general considerations are applicable to the objections made to paragraphs 7 and 8. As to paragraph 10, it is [6] specifically urged that no duty devolved upon the sheriff to serve the bench warrants, because it is alleged that they were issued by the judge of the district court instead of by the clerk. This is clearly a verbal misprision. From the whole paragraph it is fairly deducible that the bench warrants were issued out of the court in the regular way upon the order of the judge and that it was the duty of the sheriff to serve them. But even if we grant this paragraph to be valueless, enough remains in the accusation to justify the putting of the appellant upon his trial.

2. The district court adjudged the appellant to be guilty, specifically finding the allegations of paragraphs 5, 7, 8 and 10 to have been sustained by the evidence beyond a reasonable doubt. We need not enter into a discussion of this evidence. Suffice it to say that we have read it all and it justifies the court's conclusions. Neither cowardice nor self-interest on the part of the appellant are shown; but there is shown such a degree of inadequacy, such a lack of preparation, such an indisposi-

tion to resort to any effective means for the discharge of his obvious duty in the premises as to amount to official incompetency and neglect.

Complaint is made that the trial court heard incompetent [7] evidence. Whether the testimony referred to was incompetent or not, we are not required to decide. The presumption is that if it was incompetent, the trial court who heard the case without a jury eliminated such testimony from its consideration. (*Finlen* v. *Heinze,* 28 Mont. 548, 73 Pac. 123; *Lane* v. *Bailey,* 29 Mont. 548, 556, 75 Pac. 191.)

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE HOLLOWAY, being absent, did not hear the argument, and takes no part in the foregoing decision.