STATE EX REL. HOUSTON, RELATOR, *v.* DISTRICT COURT
ET AL., RESPONDENTS.

(No. 4,984.)

(Submitted December 5, 1921. Decided December 13, 1921.)

[202 Pac. 756.]

*Civil Officers—Removal—Proceedings Criminal in Nature—District Judges—Disqualification by Affidavit Under Fair Trial Law not Permitted.*

1. *Held,* that proceedings for the removal of civil officers under section 9006, Revised Codes, as amended by Chapter 25, Laws of 1917, are criminal in their nature, and that therefore neither party has the right to file an affidavit disqualifying a district judge for imputed bias or prejudice under section 6315, Revised Codes, as amended by Chapter 114, Laws of 1909. (MR. JUSTICE HOLLOWAY dissenting.)

[61 Mont. 558.]

Original application by the State, on the relation of William H. Houston, for Writ of Prohibition directed to the District Court of the Fourth Judicial District in and for the County of Missoula and Charles W. Pomeroy, Judge presiding. Proceedings dismissed.

*Messrs. Mulroney & Mulroney* and *Mr. F. C. Webster*, for Relator, submitted a brief; *Mr. E. C. Mulroney* argued the cause orally.

*Mr. Wellington D. Rankin*, Attorney General, for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

Relator is the duly elected, qualified and acting sheriff of [1] the county of Missoula. Wellington D. Rankin, as attorney general, filed an accusation in the district court of Missoula county accusing relator of misconduct in office and praying for his removal under the provisions of section 9006 of the Revised Codes, as amended by Chapter 25, Session Laws of 1917. The local judges, deeming themselves disqualified, called upon Honorable Chas. W. Pomeroy, judge of the eleventh judicial district, to preside at the hearing. Relator filed an affidavit of disqualification under the provisions of subdivision 4, section 6315, of the Revised Codes, as amended by Chapter 114 of the Laws of 1909. The attorney general filed a motion to have the affidavit stricken from the files, which was done, and thereupon Judge Pomeroy set the case for trial and announced his determination to retain jurisdiction thereof, and to hear the same. Relator then filed in this court his petition for writ of prohibition to restrain Judge Pomeroy from proceeding with the trial of the case, and to compel the reinstatement of the affidavit of disqualification. Order to show cause was issued. Upon return day, respondents filed their motion to quash on the ground that, upon the face of

the application, relator is not entitled to the relief prayed for, and that the application does not state facts sufficient to warrant the granting of such relief.

It is conceded by both parties that the statute authorizing a party to file a disqualifying affidavit does not apply to cases of criminal nature. The question involved here is whether the proceeding in the district court is in its nature civil or criminal. If it is the former, then the affidavit of disqualification was properly filed, and Judge Pomeroy was disqualified from hearing the case; but, if the latter, then the disqualifying affidavit was ineffectual for any purpose, and Judge Pomeroy was justified in proceeding with the trial.

In determining this question, we do not consider that it is necessary to go outside of the Constitution and statutes of this state and the former decisions of this court. Section 17 of Article V of the state Constitution provides that the governor and other state and judicial officers, except justices of the peace, shall be liable to impeachment for high crimes and misconduct and malfeasance in office. Section 18 of the same Article provides that all officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law. The Constitution provides that impeachment shall be tried by the Senate sitting for that purpose, but the Constitution leaves it entirely to the legislature to provide in what manner actions for the removal of other officers shall be brought and tried. It is established that impeachment proceedings are criminal in their nature. (29 Cyc. 1413.) Inasmuch as there cannot be any substantial difference in character between a proceeding brought against a certain class of officers before the Senate for removal, and one brought for the same object before some other tribunal in such manner as may be designated by the legislature, it must be held that the actions are essentially of the same nature. As impeachment proceedings are criminal in nature, as already pointed out, then, as a natural conse-

quence, it follows that proceedings to remove other officers are likewise criminal in their nature.

A reference to the statutes confirms the theory that such was the understanding of the legislature. The section under which the proceedings are brought, being section 9006, Revised Codes, as amended by Chapter 25, Laws of 1917, reads as follows: ''When an accusation in writing, verified by the oath of any person, is presented to the district court, alleging that any officer within the jurisdiction of the court has been guilty of knowingly, willfully, and corruptly charging and collecting illegal fees for services rendered, or to be rendered, in his office, or has willfully refused or neglected to perform the official duties pertaining to his office, the court must cite the party charged to appear before the court at a time not more than ten nor less than five days from the time the accusation was presented; and on that day, or some other subsequent day not more than forty days from the date on which the accusation was presented, must proceed to hearing, in a summary manner, or trial, upon the accusation and evidence offered in support of the same, and the answer and evidence offered by the party accused; provided, if the charge be for the charging and collecting of illegal fees or salaries, the trial must be by jury if the defendant so demands, and conducted in all respects and in the same manner as the trial of an indictment for a misdemeanor, and the defendant shall be entitled, as a matter of defense, to offer evidence of, and the jury under proper instructions shall consider, his good faith or honest mistake, if any be shown, and the value received by the state, county, township, or municipality against whom the charges or fees were made. If, upon such hearing or trial, the charge is sustained, the court must enter a judgment that the party accused be deprived of his office, and for such costs as are allowed in civil cases; and if the charge is not sustained, the court may enter a judgment against the complaining witness for costs as are allowed in civil cases.'' This section is included within a Chapter entitled: ''The Removal of Civil

Officers otherwise than by Impeachment." The first section of the Chapter provides that: "All officers not liable to impeachment are subject to removal for misconduct or malfeasance in office, as provided in this Chapter." (Sec. 8991.) Following the section last quoted appear two methods for the removal of officers, one method to be used in certain cases, and the other method in certain other cases. The first method provides that an accusation against the officer for willful or corrupt misconduct or malfeasance in office may be presented by the grand jury, and then provides for subsequent proceedings, including the trial and judgment. The second method is found in the section under which the proceedings in the district court were commenced. Inasmuch as the object in both proceedings was the same, and they differed only in the method of accomplishing such object, and inasmuch as both were included in the same Chapter and under the same heading, and were included within the Penal Code, there is substantial reason for believing that it was the intent of the legislature to characterize these proceedings as criminal in nature.

As was stated in the case of *State ex rel. Brandegee* v. *Clements*, 52 Mont. 57, 155 Pac. 271, involving the question as to whether or not *habeas corpus* proceedings were criminal in nature, the essential nature of a remedy is not to be determined solely by its classification in the Codes; yet "those circumstances are to be considered but they are not to be given weight beyond their due." The definition by the Code of "crime" is significant in this case. Section 8107 of the Revised Codes defines crime as follows: "A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: 1. Death. 2. Imprisonment. 3. Fine. 4. Removal from office; or, 5. Disqualification to hold and enjoy any office of honor, trust, or profit in this state."

Section 8911, Revised Codes, provides that criminal actions shall be prosecuted as follows: "Every public offense must be

prosecuted by indictment or information, except—1. Where proceedings are had for the removal of civil officers of the state. * * * "

Revised Codes, section 9102, provides that "All public offenses triable in the district courts must be prosecuted by indictment or information, except as provided in the next section." The next section reads as follows: "When the proceedings are had for the removal of district, county, municipal, or township officers, they may be commenced by an accusation or information, in writing, as provided in sections 8992 (1531) and 9000 [9006?] (1545) of this Code." From these statutory references to the subject of removal from office, it is clear that the proceedings involving removal from office were deemed by the legislature to be criminal in character. Removal from office is included as a part of the definition of a crime in certain cases, and it is expressly exempted from the class of criminal cases to be prosecuted by indictment or information, which exception would be unnecessary if the proceeding was civil in character.

This court has had occasion to construe this section in the following cases: *State ex rel. Rowe* v. *District Court,* 44 Mont. 318, Ann. Cas. 1913B, 396, 119 Pac. 1103; *State ex rel. McGrade* v. *District Court,* 52 Mont. 371, 157 Pac. 1157; *State ex rel. Payne* v. *District Court,* 53 Mont. 350, 165 Pac. 294. In the *Rowe Case,* after discussing section 9006 in connection with the other provisions in the same Chapter for removal of civil officers, the court, through Mr. Chief Justice Brantly, came to this conclusion: "It is evident that the legislature intended to make this proceeding a *quasi*-criminal prosecution, both because the section is found in the Penal Code and because it imposes as a punishment removal from office." In the *McGrade Case,* considering the same subject matter, the court, through Mr. Chief Justice Brantly, designated the nature of the proceeding as follows: "The proceeding, though it may be instituted by a private person, is a public proceeding, and, except that it is summary in its nature, is to be classed as a

prosecution for crime. [Citing cases.] In *State ex rel. Rowe* v. *District Court, supra,* it was referred to as a *quasi*-criminal proceeding; yet, since under section 9006 the result of a conviction is removal from office, and this is defined by section 8107 as a punishment for a crime, the qualifying term *'quasi'* might as well have been omitted."

It is contended by relator that the *Payne Case* in effect overrules the decisions of this court in the *Rowe* and *McGrade Cases.* We are unable to agree with the contention of counsel in this regard. In the *Payne Case,* the section was considered in connection with the claim that the Act was unconstitutional because it attempts to authorize a prosecution for crime by a private individual, and the trial and conviction of the accused upon a summary hearing without a jury, while section 8, Article III, of the Constitution provides that all criminal actions in the district court, except those on appeal, shall be prosecuted by information or indictment. After holding that: " 'Criminal prosecutions,' as those terms are employed in the Constitution, refer to prosecutions for offenses which were crimes at common law, and doubtless to statutory offenses," Mr. Justice Holloway, speaking for the court, used this expression: "The accused is not entitled to a trial by jury, and it is not a criminal action in the sense that the public prosecutor must conduct the proceedings." We cannot say that this holding of the court is in any sense inconsistent with the decisions in the *Rowe* and *McGrade Cases.* The *Payne Case* does not hold that such a proceeding is not criminal in its nature, but merely that it is not a criminal action in the sense that the public prosecutor must conduct the proceedings. This decision is in harmony with the holding of this court in *State ex rel. Flynn* v. *District Court,* 24 Mont. 33, 60 Pac. 493, in which it was decided in a contempt case that, while the action was criminal in nature, it is not to be regarded as a "criminal offense," to be "prosecuted only by complaint, information or indictment, as laid down by section 8 of Article III of the state Constitution, but rather as a special proceeding of a

[61 Mont. 558.]

criminal character—in that sense it is a public offense, yet it is not one a prosecution for which is exclusively controlled by constitutional limitations circumscribing methods of prosecution of strictly criminal offenses. (*Williamson's Case*, 26 Pa. St. 19.)''

In view of the statutory provisions, and their interpretation by this court in its previous decisions, it must be held that proceedings for the removal of civil officers under section 9006, as amended, are criminal in their nature, and, being criminal in their nature, neither party has the right of filing a disqualifying affidavit under the provisions of subdivision 4, section 6315, as amended.

For the reasons herein stated, it is ordered that the motion to quash be sustained and the proceedings dismissed.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICE COOPER concur.

MR. JUSTICE GALEN: This court has by repeated decisions held proceedings for the removal of public officers, under section 9006 of the Revised Codes, to be criminal in nature, rather than civil. Were the question a new one, I should place such proceedings in the category of civil actions; however, in application of the doctrine of *stare decisis,* I concur.

MR. JUSTICE HOLLOWAY: I am unable to agree with my associates that the conclusion announced by them can be justified upon any or all of the grounds stated.

1. Removal proceedings under section 9006 are assimilated to impeachment proceedings only to the extent that both look to the same end—the removal of an unfaithful officer. Beyond that there is not any similarity between them. If impeachment proceedings, under the Constitution of this state, are criminal proceedings, then section 17, Article V, is in direct conflict with section 18, Article III, a consequence not per-

missible if avoidable under any recognized rule of construction, and it can be avoided only by holding that impeachment proceedings are not criminal in character; and therefore a person ousted from office thereby may be prosecuted for · the same offense.

Impeachment proceedings are essentially judicial proceedings under all of the authorities (Pomeroy's Constitutional Law, 118), whereas the power to remove a civil officer by summary proceedings is in its nature political, and has reference exclusively to the polity of government (*People ex rel. Clay* v. *Stuart,* 74 Mich. 411, 16 Am. St. Rep. 644, 41 N. W. 1091). It may be conferred upon the governor, upon a court of inferior and limited jurisdiction, or upon a board of laymen acting in the most informal manner. (*State ex rel. Payne* v. *District Court,* 53 Mont. 350, 165 Pac. 294.) Indeed, the very power to remove under section 9006 is conferred by statute upon a city council, so far as city officers are concerned. (Sec. 3236, Rev. Codes; *State ex rel. Working* v. *Mayor,* 43 Mont. 61, 114 Pac. 777; *State ex rel. Ryan* v. *Board,* 45 Mont. 188, 122 Pac. 569.) It follows that removal from office is not essentially a judicial remedy, for, if it is, it can be enforced only by a court or judicial officer (sec. 8077, Rev. Codes), and it would be beyond the power of the legislature to confer the authority upon any other body (sec. 1, Art. IV, Constitution).

I insist, therefore, that impeachment proceedings furnish no basis from which to argue that the proceeding under section 9006 is criminal in character.

2. Neither is the fact that section 9006 is found in the Penal Code of the slightest consequence. The arrangement of the Codes—the assignment of a particular Act to one Code or to another—is simply the work of the commissioner appointed for that purpose. (*State ex rel. Brandegee* v. *Clements,* 52 Mont. 57, 155 Pac. 271.) It will not do to say that the rights and liabilities of the citizens of this state are made to depend upon the judgment, the whim, caprice, the inadvertence or mistake of the Code commissioner, and the very legislature which en-

acted the Codes forfended against any such ridiculous conclusion. Section 3562, Revised Codes, provides: "The arrangement and classification of the several parts of said Codes have been made for the purpose of convenience and orderly arrangement, and therefore no implication or presumption of a legislative construction is to be drawn therefrom." In view of this language I submit that this court is without authority to say that a specific legislative intention is manifested by the position in the Codes which a statute happens to occupy.

The majority opinion is not only contrary to the express declaration of the statute (sec. 3562), but in conflict with the former decisions of this court. The statutes governing proceedings punishing contempt of court are found in the Code of Civil Procedure (secs. 7309–7322), but the proceedings have been declared to be of a criminal nature, as they are manifestly. (*State ex rel. Flynn* v. *District Court,* 24 Mont. 33, 60 Pac. 493; *State ex rel. Gemmell* v. *Clancy,* 24 Mont. 359, 61 Pac. 987; *State ex rel. B. & M.* v. *Harney,* 30 Mont. 193, 76 Pac. 10; *State ex rel. Webb* v. *District Court,* 37 Mont. 191, 15 Ann. Cas. 743, 95 Pac. 593.)

Again, either house of the legislative assembly may punish for contempt, but the procedure is found in the Political Code (sec. 97, Rev. Codes). On the other hand, the *habeas corpus* statutes are contained in the Penal Code (secs. 9630–9662), but the proceedings are nevertheless of a civil nature. (*State ex rel. Brandegee* v. *Clements,* above.)

I insist, therefore, that no presumption can be drawn from the fact that section 9006 is contained in the Penal Code.

3. The fact that an officer proceeded against under section 9006 may be removed from office does not indicate that the legislature deemed the proceeding to be criminal in character. Sections 20 and 21, Chapter 143, Laws of 1917, provide that certain officers, including a sheriff, may be removed from office for failure to discharge the duties imposed by the prohibition law, but the proceeding is declared by the legislature to be

civil in its nature, and could not be construed to be anything else.

4. Conceding that this court has heretofore expressed the opinion that the proceeding under section 9006 is criminal in its nature, it does not follow that those decisions should be adhered to if erroneous. No pride of opinion should prevent this court from correcting its own mistakes. In *State ex rel. Rowe* v. *District Court,* 44 Mont. 318, Ann. Cas. 1913B, 396, 119 Pac. 1103, it was said that the proceeding is *quasi-*criminal, and two cases from California were cited in support of the conclusion. (*Kilburn* v. *Law,* 111 Cal. 237, 43 Pac. 615, and *In re Curtis,* 108 Cal. 661, 41 Pac. 793.) Each of those cases was decided in view of a constitutional provision materially different from our section 18, Article V, and under a statute which attaches a penalty of $500 in addition to removal from office, and that penalty has been determined to be a fine. (*Wheeler* v. *Donnell,* 110 Cal. 655, 43 Pac. 1.)

The supreme court of California has held repeatedly that the proceeding for the summary removal of an officer is criminal in character—criminal to the extent that the accused cannot be compelled to be a witness against himself (*Wheeler* v. *Donnell,* above), and the proceedings must be conducted in the name of the state (*Cline* v. *Superior Court,* 184 Cal. 331, 193 Pac. 929). The reason assigned by the California court for its decisions is that punishment is the primary purpose of the California removal statute, but I do not believe that the majority of this court will follow the California doctrine to its logical conclusion, and, if not, then the holding in the *Rowe Case* is without any foundation. In *State ex rel. Mc-Grade* v. *District Court,* 52 Mont. 371, 157 Pac. 1157, the court merely followed the *Rowe Case,* and to the same wrong conclusion. In *State ex rel. Payne* v. *District Court,* above, we disapproved the decisions in the *Rowe* and *McGrade Cases* to the extent of holding that the proceeding is a special statutory one, subject to the analysis there made. That analysis upon

the very face of it demonstrates that the proceeding is not criminal in character.

The fact that one removal statute (secs. 20, 21, Chap. 143, Laws 1917) is declared by the legislature to be civil in character is not a controlling consideration, and neither is it of consequence that in sections 8911 and 9102, Revised Codes, the failure of an officer to perform the duties of his office is referred to as a "public offense." In order to determine whether the proceeding under section 9006 is criminal in character, the test to be applied is this: Is punishment the primary purpose of the proceeding?

I undertake to say that there cannot be any difference of opinion upon this proposition: That every criminal proceeding has for its real object and end the punishment of the offender. (*State · ex rel. Brandegee* v. *Clements,* above; *Jernigan* v. *Commonwealth,* 104 Va. 850, 52 S. E. 361; *Maben* v. *Rosser,* 24 Okl. 588, 103 Pac. 674.) Except in California and a few other states having similar statutes, which do look primarily to the punishment of the offender, proceedings for the summary removal of civil officers are held generally to be civil in character, designed to rid the public of unfaithful servants. (*People* v. *Meakim,* 133 N. Y. 214, 30 N. E. 828; *State ex rel. Johnson* v. *Foster,* 32 Kan. 14, 3 Pac. 534; *Territory* v. *Sanches,* 14 N. M. 493, 20 Ann. Cas. 109, 94 Pac. 954; *State* v. *Leach,* 60 Me. 58, 11 Am. Rep. 172; *Oesterreich* v. *Fowle,* 132 Mich. 9, 92 N. W. 497; *State ex rel. Mitchell* v. *Medler,* 17 N. M. 644, Ann. Cas. 1915B, 1141, 131 Pac. 976; *Skeen* v. *Craig,* 31 Utah, 20, 86 Pac. 487; *State* v. *Brown,* 24 Okl. 433, 103 Pac. 762; *State* v. *Borstad,* 27 N. D. 533, Ann. Cas. 1916B, 1014, 147 N. W. 380.) In *People* v. *Meakim,* above, the court said: "The simple removal of an officer from office is not a punishment for crime unless it is a removal in consequence of a conviction for a crime. It cannot be said that a determination made in a civil proceeding to remove a public officer for neglect or malfeasance in office is in any proper sense a conviction of such officer of a crime. Nor can it be said that

the provision for removal from office contained in section 109 is a provision in any proper sense for the punishment of the officer removed.''

In *State ex rel. Johnson* v. *Foster,* the Kansas court, considering a proceeding for the removal of civil officers, said: ''It is not an action for which any punishment by imprisonment or fine may be inflicted upon the defendant. It is not an action for punishment at all. The purpose of the proceeding is to remove the defendant from office, and this may be done by a civil action in the manner provided in the Code of Civil Procedure.''

The case of *Territory* v. *Sanches,* above, is reported in 20 Ann. Cas. 109, and in an extensive note the author says: ''There is some conflict in the authorities with respect to whether a proceeding for the removal of a public officer is of a civil or a criminal nature. Much of this conflict may be traced to a difference in the statutes governing such proceedings. The rule followed in a majority of the jurisdictions is that a proceeding for the removal of a public officer is not a criminal proceeding; that the object of such a proceeding is to protect the public from corrupt officials, not to punish the offender.''

The removal provided for in section 9006 is incidental only, to pave the way for the installation of faithful officers. And there is not any reason why removal should be considered punishment, and every reason why it should not be so considered. The willful neglect of official duty is made a crime by section 8281, Revised Codes, and adequate punishment is provided. It could not be contended seriously that one removed from office under the proceeding authorized by section 9006 could plead the judgment in bar of an ordinary criminal prosecution for the same offense, and yet, if removal from office is a punishment for the offense committed, then a person may be twice put in jeopardy for the same offense, notwithstanding the constitutional guaranty to the contrary (sec. 18, Art. III). The only reason why the judgment authorized by

section 9006 could not be pleaded in bar is that the proceeding is not criminal in character.

The proceeding does not partake of the nature of a criminal trial. There is no indictment, information or criminal complaint; no warrant, arrest or bail. The accused is served as in a civil action. No fine or imprisonment can be imposed. The judgment cannot extend beyond removal from office, and the ousted officer is not rendered ineligible for re-election to the same position. Finally, as indicative of legislative intent, section 9006 provides for the entry of an ordinary judgment, and that costs shall be allowed as in civil actions.

All judicial remedies are embraced in two classes, actions and special proceedings (sec. 8078, Rev. Codes), and actions are of two kinds, civil and criminal (sec. 8081). Section 9006 does not provide for an action, either civil or criminal. The proceeding indicated is not a civil action because it is not a controversy waged between parties, within any definition of a civil action. If it is a criminal action, then it must be prosecuted by indictment or information (Const., Art. III, sec. 8), and the accused is entitled to a jury trial (Const., Art. III, sec. 16). But it is not a criminal action, and no one will contend that it is.

Under our system of laws, every judicial remedy, which is not an action, is a special proceeding. (Sec. 8078, Rev. Codes.) But the special proceeding authorized by section 9006 is not a special proceeding of a criminal nature because it does not look primarily to punishing the derelict officer. There is but one other class remaining—a special proceeding of a civil nature, and to that class this proceeding belongs by every rule of reason and authority. But, if the true character of the proceeding is doubtful, I insist that the doubt should be resolved in favor of the party against whom the proceeding is directed, to the end that it may be heard by a judge whose impartiality is not questioned. In this connection the proper construction of the "fair trial" law (subd. 4, sec. 6315, Rev. Codes, as amended) is pertinent.

In *State ex rel. Bank* v. *District Court,* 50 Mont. 259, 146 Pac. 539, we said: "However much the statute [sec. 6315—4] may be abused, however much the courts may be imposed upon under its sweeping provisions, it is still the law of this state, binding upon courts and judges, and to be administered according to its true intent and purpose."

In *State ex rel. Carroll* v. *District Court,* 50 Mont. 506, 148 Pac. 312, this court said: "That a right may be conferred by statute; that when so conferred, it is entitled to judicial recognition; that such recognition cannot be withheld nor the right abridged because it is subject to abuse; and that subdivision 4 of section 6315, Revised Codes, as amended, is such a statute and confers such a right—are propositions too well settled for discussion."

In *Gehlert* v. *Quinn,* 38 Mont. 1, 98 Pac. 369, it was held that section 6315—4, the so-called "fair trial" law, "should be liberally construed, with a view to effect its object and promote justice." Now, what was the object of the fair trial law? It could have but one purpose—to relieve a party in court from the necessity of having his cause passed upon by a biased or prejudiced judge. If it was necessary to have such a statute applicable to civil cases wherein either party is entitled to a trial by jury, how much greater the necessity for such an Act to relieve one who is a party to a proceeding wherein he is not entitled to a jury trial, and has not the right of appeal if the proceeding is criminal in character.

It is a monstrous doctrine announced by the majority, that this relator whose civil rights may be invaded, and who is not entitled to a jury trial, must nevertheless be tried by a judge whom he believes to be so far biased and prejudiced against him that he cannot have a fair trial. The doctrine is announced three centuries too late. It might have met with universal approval in the dark ages, but it has no place in the jurisprudence of the twentieth century. It denies to relator a fair trial; but the doctrine itself is no more startling

than the attitude of a judge who insists that he shall try the cause of one who believes him to be unfair and who makes known his belief under the sanction of an oath.

Neither is it an argument in favor of the construction of section 9006, adopted by the majority, that a defendant in an ordinary criminal action may not disqualify a judge except upon proof of his prejudice. (Sec. 9219, Rev. Codes.) The law throws about such a defendant every safeguard necessary for his adequate protection—safeguards which more than compensate for his inability to invoke the provisions of section 6315.