IN THE MATTER OF THE IMPEACHMENT OF ELMER RUSSELL BEVINS, AN ELECTED COUNTY OFFICER OF THE COUNTY OF MAUI, TERRITORY OF HAWAII.

No. 1647.

RESERVED QUESTION FROM CIRCUIT JUDGE SECOND CIRCUIT. HON. D. H. CASE, JUDGE.

ARGUED AUGUST 4, 1925.                    DECIDED SEPTEMBER 12, 1925.

PERRY AND LINDSAY, JJ., AND CIRCUIT JUDGE BANKS IN PLACE OF PETERS, C. J., ABSENT.

PUBLIC OFFICERS—*removal from office—corrupt intent.*

> Corrupt intent is not an essential ingredient of the "malfeasance" or the "maladministration in office" which under R. L. 1925, Sec. 1639, justifies and requires the removal of a county officer from office.

> A county attorney, in receipt of a regular salary expressly provided by law, who claims and receives from the county an additional fee, not provided for by law, for professional services rendered by him for the county, violates section 168, R. L. 1925, and is guilty of malfeasance in office justifying and requiring his removal, irrespective of whether the acceptance of the additional fee was due to ignorance or mistake of the law or to corrupt motives.

OPINION OF THE COURT BY PERRY, J.

Twenty-nine persons, claiming to be duly qualified and registered voters of the County of Maui, filed a petition in the circuit court of the second circuit praying for the removal of the respondent from office. The allegations of the petition are as follows: that the respondent is "a duly elected, qualified and acting county officer" of the County of Maui, "having been elected to said office on the 13th day of October, 1923," and that "ever since said

date has been, and now is, such county attorney, in charge and performing the duties of said office," and that he "is by reason thereof a deputy attorney general of the Territory of Hawaii;" that the respondent as county attorney "is under the law entitled to and has received regularly since the date of his election, as aforesaid, a fixed salary in the sum of three hundred and fifty dollars per month, as salary and compensation for all professional services rendered by him for and on behalf of said County of Maui;" that the respondent "is a public officer" and that the salary named "is such a salary as is referred to in section 168 of the Revised Laws of Hawaii, 1925, which provides that 'no public officer in receipt of a salary for his services shall receive any other or further compensation therefor, unless specially allowed by law;' " that in May, 1925, in the County of Maui the respondent "while holding said office of county attorney aforesaid, filed with the board of supervisors of the County of Maui a claim for five hundred dollars for professional services rendered by him for and on behalf of the County of Maui, to-wit, for services as legal advisor of said county in attendance upon the regular 1925 session of the legislature of the Territory of Hawaii, at Honolulu, City and County of Honolulu, Territory of Hawaii, in drafting proposed legislative measures affecting said County of Maui and in other legal services connected with proposed legislation in which said County of Maui was deemed by him to have an interest;" that the said claim was "for the sum of five hundred dollars in addition to said regular monthly salary;" that the respondent "while holding said office of county attorney, was without right, under the law, to any compensation other than his salary aforesaid, or to present any claim, account or demand to the County of Maui for any professional services rendered by him, as county

attorney aforesaid," and "on the contrary was expressly prohibited by law from claiming any other or further compensation than his salary aforesaid;" that in June, 1925, the said claim "was certified to by S. E. Kalama, chairman and executive officer of the board of supervisors of the County of Maui aforesaid, and thereafter the auditor of said County of Maui, in payment of said claim, issued a warrant against said County of Maui, payable" to the respondent "in the sum of five hundred dollars, which warrant was delivered" to the respondent "and cashed by him" in June, 1925, "by reason whereof" the respondent "without lawful right, unlawfully received from said County of Maui and unlawfully converted to his own use and benefit the sum of five hundred dollars;" and that "by reason of the matters and things hereinabove set forth" the respondent "as county attorney aforesaid has been guilty of malfeasance, misfeasance and maladministration in office and is unworthy and wholly unfit to perform further the duties of his said office as county attorney of said County of Maui." To this petition the respondent filed a demurrer based upon ten grounds, all of which may be summarized in the statement that no legal cause for the removal of the respondent from office is set forth in the petition. Thereupon the circuit judge reserved to this court the question, "Should the demurrer of the respondent be sustained upon any of the grounds therein set forth?"

The two main contentions advanced on behalf of the respondent are that in receiving the sum of $500 mentioned in the petition the respondent did not violate any law and that, even if he did violate the law in so doing, cause for his removal has not been stated in the petition because it is not therein alleged that his claim for or receipt of the money was with corrupt intent and that for aught that appears to the contrary in the petition

it may be that his acceptance of the $500 was due to an innocent mistake on his part as to the correct construction of the law on the subject.

R. L. 1925, section 168, provides that "no public officer in receipt of a salary for his services, shall receive any other or further compensation therefor, unless specially allowed by law." It is not disputed in this case that the respondent is a public officer within the meaning of this section or that he is in receipt of a salary for his services as such public officer. The allegation of the petition is that the additional sum of $500 was intended and received as compensation "for professional services rendered by him for and on behalf of the County of Maui, to-wit, for services as legal advisor of said county in attendance upon" a session of the legislature of the Territory "in drafting proposed legislative measures affecting" the county and "other legal services connected with proposed legislation in which" the county was deemed to have an interest. Upon the allegations of the petition, which upon demurrer are taken to be true, the services rendered by the respondent for which he accepted the additional compensation were clearly professional services such as might have been rendered by an attorney for his client and such as might have been rendered by the attorney of the County of Maui for that county. Were they a part of "his services" referred to in section 168 for the performance of which he was in receipt of a regular salary and for the performance of which he was prohibited by the same section from accepting any further compensation?

In the chapter on "County Government," R. L. 1925, section 1585, under the subtitle of "County Officers," provides that "the officers of each county shall be a board of supervisors * * * an auditor, a county attorney and a treasurer." The designation thus given to

this officer of the county would in itself contain at least a strong indication that what was intended was that the officer was to be the regular, standing attorney of the county with the powers and the duties ordinarily devolving upon an attorney chosen and retained to advise and represent in all matters a particular client. This intention is to some extent strengthened by the provision in section 1611 that "no person shall be elected county attorney who shall not, in addition to the foregoing qualifications, be a duly licensed attorney admitted to practice in the supreme court of the Territory and have practiced law for at least one year in the county in which he shall be a candidate." Section 1668 says, under the title of "General Duties," that "the county attorney is the public prosecutor for the county in which he shall have been elected" and proceeds to prescribe certain duties devolving upon him. Section 1670 provides that "he shall give when required and without fee his opinion in writing to the county officers on matters relating to the duties of their respective offices." Section 1671 sets forth the comprehensive statement that "the county attorney is the legal adviser of the board of supervisors," which is the equivalent of saying that the county attorney is the legal advisor of the county. A broader statement than this could scarcely have been devised. The county attorney is thus declared to be the legal advisor of the county not only in respect to some matters but in respect to all matters upon which legal advice may properly be asked or expected. He is prohibited by section 1672 from presenting "any claim, account or demand for allowance against the county" except for his own service. Nor is there in these provisions or in any other provision which has come to our attention any limitation to the effect that these duties as the advisor and legal representative of the county shall or may be performed only within

the geographical boundaries of the county. No such limitation being expressed, the inference must be. that it was intended by the legislature that the duties of the office could and should be performed by the officer either within the particular county which elected him or in any of the other counties where the performance of the duties might be necessary or desirable in furtherance of the interests of the county employing the officer. Ever since the establishment of county government in this Territory it has been familiar practice for county attorneys from all of the counties of the Territory to attend personally before the supreme court of the Territory sitting in Honolulu for the presentation of cases concerning their respective counties. It seems to us that such practice is correct and within the powers and the duties of the county attorneys. So, also, it would clearly be within their powers and duties to attend, if it seems, necessary or desirable, any other circuits for a study of the evidence or of the law involved in any prosecution or other case in which their employers are interested. Attendance before the legislature or its committees, in session at Honolulu, for proper purposes, such as the presentation of the needs of the counties, and consultations and advice as to the form of proposed laws or amendments to laws would come within the same category. These latter would be professional services such as an attorney could properly render for his client and such as a county attorney could properly render for his client, the county. They are services which can properly be expected by the county from its attorney, at least upon payment or tender of his expenses consequent upon the performance of the services in Honolulu.

There are other provisions of the statute which lead to the same result and perhaps make even clearer that it is the correct result. Section 1673 provides that "each

county attorney when elected shall become a deputy of the attorney general of the Territory and shall report to the attorney general from time to time as he may be required" and section 1488 provides that the attorney general "shall, when required, give his opinions upon questions of law submitted to him by the governor, the legislature, or the head of any department." Section 1489 further requires that the attorney general "shall, without charge, at all times when called upon, give advice and counsel to the heads of departments, the high sheriff, sheriffs, magistrates and other public officers, in all matters connected with their public duties, and otherwise aid and assist them in every way requisite to enable them to perform their duties faithfully." In the case entitled *In re Bevins,* 26 Haw. 570, 576, this court spoke of "the community and the county which he represents" as the "every-day clients" of a county attorney; and said that "It is obvious that the provision of R. L., section 1585" (now section 1673), "making each county attorney a deputy of the attorney general, vests each such deputy with all of the powers of the attorney general but subject always to all of the same limitations and restrictions applicable to the attorney-general; and that therefore the inhibitions of section 1431 apply to county attorneys." *Ib.,* pp. 580, 581. Under these statutes it is obviously one of the duties of the attorney-general to advise legislators, as well as other public officers, in aid of the correct drafting of bills or the performance of their other duties. The same duty, is cast by these statutes upon county attorneys who are deputies of the attorney-general. It would be incorrect to say that for these duties as deputies of the attorney-general the county attorneys receive no compensation. The compensation, in the form of a salary, which they are specifically granted by law is compensation for the performance of all of

their duties, whether enumerated in one section or in another section of our laws.

In accepting the additional fee of five hundred dollars the respondent, therefore, violated the statute.

This proceeding is instituted under the provision of section 1639, R. L. 1925, that "any elected county officer, * * * including a supervisor, may be removed for malfeasance, misfeasance, nonfeasance or maladministration in office," upon petition of twenty-five citizens and voters of the county. No question is raised as to the correctness of the procedure thus far followed other than in the contention as to the insufficiency of the allegations of the petition. In the absence of any constitutional provision to the contrary, what shall constitute sufficient ground for the removal of an incumbent from public office is a matter to be determined by the legislature. There is no constitutional provision affecting the case at bar. The only legislative determination and declaration is that which has been just quoted, to wit, that an officer may be removed "for malfeasance, misfeasance, nonfeasance or maladministration in office." In the case at bar there is no attempt to charge misfeasance or nonfeasance. The attempt is to charge malfeasance. The question is, what, under the present state of our statutes, is malfeasance? Is corrupt intent an essential ingredient of that cause of removal as set forth in our statute?

The authorities on this general subject are conflicting and contradictory but this, as in so many other instances, is to be accounted for by the fact that the statutes under consideration in the various jurisdictions are different. In some, in the enumeration of the causes of removal, the word "wilful" or other expression of similar import is used as characterizing the derelictions of duty named, while in others it is not so used. In still others, the qualifying word is used with reference to some of the

causes of removal and not as to others. With but few exceptions the courts and without exception the lexicographers define and use the word "malfeasance" as well as the words "misfeasance," "nonfeasance" and "maladministration" as not importing in and of themselves a corrupt or felonious intent on the part of the officer violating a positive duty. "A misfeasance strictly is a default in not doing a lawful act in a proper manner— omitting to do it as it should be done—while a malfeasance is the doing of an act wholly wrongful and unlawful, and nonfeasance is an omission to perform a required duty at all, or total neglect of duty." *Coite* v. *Lynes*, 33 Conn. 109, 114, 115. The word malfeasance is derived from "mal," evil, and "faisant," doing. The doing of evil, it need hardly be stated, may be the result of ignorance or inattention or recklessness as well as of conscious and intentional wrongdoing. Webster defines malfeasance as "the doing of an act which a person ought not to do." The Century Dictionary defines it as "the doing of that which ought not to be done * * * the doing of an act which is positively unlawful or wrongful in contradistinction to misfeasance or the doing of a lawful act in a wrongful manner." In 5 Words and Phrases 4297, the definition is given as "the doing of an act which is wholly wrongful and unlawful * * * the doing of an act which a person ought not to do at all." In *State* v. *McClellan*, 85 S. W. (Tenn.) 267, 269, malfeasance is said to be "the doing, either through ignorance, inattention or malice, of that which the officer had no legal right to do at all, as where he acts without any authority whatever or exceeds, ignores or abuses his powers." Abbott's Law Dictionary defines the word as meaning "the commission of some act which is positively unlawful." Mechem in his work on public officers, section 457, says that "misconduct, wilful mal-

administration, or breach of good behavior, in office do
not necessarily imply corruption or criminal intention.
The official doing of a wrongful act or the official neglect
to do an act which ought to have been done, will consti-
tute the offense although there was no corrupt or ma-
licious motive." While the word "malfeasance" is not in
this connection specifically mentioned by this writer his
definition of "wilful maladministration" throws some
light on the subject. The following cases, though under
statutes not entirely like ours, are of some assistance:
*Bell* v. *Josselyn,* 3 Gray 309, 311; *State* v. *Lazarus,* 1 So.
(La.) 361, 375; *Harris* v. *Hanson,* 11 Me. 241, 246; *Rowe*
v. *District Court,* 44 Mont. 318; *Dudley* v. *Flemingsburg,*
72 S. W. (Ky.) 327; *Minkler* v. *State,* 14 Neb. 181, 183;
*State* v. *Examining Board,* 117 Pac. (Mont.) 77, 80;
*Carlisle* v. *Burke,* 144 N. Y. S. 163, 164, 165; *Skeen* v.
*Craig,* 31 Utah 20, 32, 33; *State* v. *McClellan,* 85 S. W.
(Tenn.) 267, 268, 269; and *Warren* v. *Commonwealth,*
118 S. E. (Va.) 125, 128, 129. Our understanding is
that the word "malfeasance" in its ordinary use does not ·
of itself import corrupt motives in the doing of that
which is unlawful. Certainly the "nonfeasance" referred
to in section 1639 was not intended to require a corrupt
motive before becoming a cause of removal. The people
of the county are not interested in the motives leading
an officer to wholly refuse to perform the duties of his
office. He may do so from motives most satisfactory to
himself; but the county is entitled to the performance
of the services either by himself or, if he is unwilling
to perform them, by a successor. The same is true of
the "malfeasance" referred to in the statute in the same
list of causes of removal. In sections 1593 and 1603, "A
neglect or failure by the chairman and executive officer
to perform any of the duties enumerated" in certain
other sections "shall be sufficient cause for his impeach-

ment and removal from office, in the manner provided by law." Clearly in those sections it was not intended that corrupt motives should be essential. Had the legislature so intended, it would have been a simple matter to have stated that the malfeasance, misfeasance, nonfeasance or maladministration requiring removal from office should be such as was inspired by fraudulent or corrupt motives. In the absence of any such qualifying words or expressions the legislature must be taken to have intended that any and all malfeasance, misfeasance, nonfeasance or maladministration should result in removal.

In naming the causes of removal in the language in which it did, the legislature may well have been moved by the thought that even in many criminal cases a corrupt intent is not necessary to a violation of the law; that in no criminal case is ignorance of the law an excuse; that, were it provided that a mistaken construction of the law would excuse its violation, "interminable questions incapable of solution" would arise (*Rowe* v. *District Court,* 44 Mont. 318, 324) and that in such a case "the denser the ignorance the greater would be the exemption from liability" (*People* v. *O'Brien,* 96 Cal. 171); that cases under this section are not criminal cases and that removals from office are not intended as punishment for the officers but purely as a protection to the community against improper administration of the law; and that no person has an inherent right to hold public office and that when he accepts the office, whether through an election or otherwise, he accepts it with the knowledge that the ordinary term is the stated number of years but that it may terminate earlier if he fails to perform his duties or performs them incorrectly or commits positive violations of law.

In our opinion, corrupt intent is not, under R. L., sec-

tion 1639, an essential ingredient of the malfeasance justifying and requiring removal from office. The reserved question is answered in the negative.

*W. B. Lymer,* Attorney General (also on the brief), for petitioners.

*M. F. Prosser* and *A. E. Steadman* (*Frear, Prosser, Anderson & Marx* and *A. E. Steadman* on the briefs) ·for respondent.