EDWARD P. IRWIN, ET AL., *v.* ALBERT R. CUNHA.
No. 1660.

ORIGINAL.

EDWARD P. IRWIN, ET AL., *v.* BEN HOLLINGER.
No. 1661.

ORIGINAL.

TRIAL MARCH 5, 15-19, 1926.　　　DECIDED MARCH 25, 1926.

PERRY, C. J., LINDSAY AND BANKS, JJ.

PUBLIC OFFICERS—*removal from office—non-feasance—non-attendance at meetings.*

Failure of a supervisor, otherwise faithful in his attendance, to attend four meetings of the board of supervisors on October 8, 9, 10 and 12, 1925, does not constitute non-feasance or cause for removal under R. L. 1925, section 1783, when there was no public business which could be transacted at the meetings other than a possible resignation of another supervisor which, so far as the absentee knew, had not yet been presented or tendered.

SAME—*reasons for non-attendance—illness.*

Upon the evidence in this case, it is held that a supervisor's absence from meetings of the board on certain specified days was justified by the state of his health.

OPINION OF THE COURT BY PERRY, C. J.

Each of the above entitled cases is a proceeding instituted in this court under R. L. 1925, section 1783, by more than one hundred legal voters, having for its object the removal of the respondent from the office of supervisor of the City and County of Honolulu, to which he was duly elected for a term beginning in January, 1924, and not yet expired.

Omitting matters not in dispute, the allegations of the petition against respondent Cunha are that he absented himself from meetings of the board of supervisors held

on June 30, July 1, 2, 7, 10, 13, 15, 17, 21, 24, 28 and 29, August 4, 5 and 6 and October 8, 9, 10 and 12, 1925; that the meetings on the days named were called for the transaction of regular business of the city and county; and that the respondent although notified of the meetings "continuously refused without justifiable excuse therefor to attend the same, feigning illness as an excuse for such nonattendance for the period from July 7 to 29 inclusive." The allegations of the petition against respondent Hollinger are that he absented himself from meetings of the board of supervisors held on October 8, 9, 10 and 12; that meetings for the dates named were called for the transaction of regular business of the city and county; and that the absences were unjustifiable. In each case it is alleged that "due to this course of conduct by the respondent the said board of supervisors has been unable to function and transact business of vital importance to the City and County of Honolulu;" and that "respondent therefore has been guilty of nonfeasance and maladministration in office." Each of the respondents filed an answer denying the truth of these allegations.

R. L. 1925, section 1783, under which these proceedings are brought, reads as follows: "Any city and county officer may be removed for malfeasance, misfeasance, nonfeasance or maladministration in office. The board of supervisors shall constitute a board of impeachment for the trial of any elected officer of the city and county (except members of the board of supervisors), who may be charged with malfeasance, misfeasance, nonfeasance or maladministration in office by not less than one hundred legal voters within the city and county. Such officer shall be informed of the charge made against him and shall be given an opportunity to defend himself against the same. The board of impeachment shall have power to hear and determine the charge, and if the same be sus-

tained, to remove from office the officer so charged, and to fill the vacancy so occurring by the appointment of some qualified person to said office for the unexpired term thereof. Provided, however, that in case of the removal of a member of the board of supervisors the vacancy so caused shall be filled by appointment by the mayor for the unexpired term of such member. The decision of the board of supervisors may be reviewed by the supreme court, upon a writ of certiorari; and provided, further, that members of the board of supervisors shall be tried for any of the causes specified in this section, and in manner similar to that provided for the trial of the city and county officers, before the supreme court of the Territory. Jurisdiction is conferred upon the supreme court to hear and try cases arising under the provisions of this chapter, with power, in case such charges are sustained, to remove any of said officers from office."

At the trial the absence of the respondents from meetings of the board on the dates named in the petitions was admitted and evidence was adduced tending to show the reasons for the non-attendance.

Testimony concerning the physical condition of Mr. Cunha prior to July 1, 1925, and during the month of July and early in August of the same year was given by the respondent himself, by an office assistant of his who had opportunities for daily observation, by a life-long friend, the Honorable W. T. Rawlins, one of the federal district judges in Hawaii, and by Dr. O'Day, a duly licensed physician who has practiced his profession continuously for thirty years and who had served as physician for the respondent and his family for eight years or more last past. The physician gave expert evidence on the subject. Without going into details we are entirely satisfied from the evidence, and it is our finding, that

during the month of July and the early part of August, 1925, the respondent's physical condition was such as to amply justify him in absenting himself from the meetings of the board of supervisors and from attending to any other business, public or private, and that it was not a dereliction of duty on his part toward the people of the city and county to refrain from attending meetings at those times.

The question at issue is therefore narrowed to this,— whether the absences of supervisors Hollinger and Cunha on October 8, 9, 10 and 12, 1925, are sufficient cause for their removal from office by this court.

A meeting of the board of supervisors was held on October 6, 1925. At that meeting all of the public business of the city and county then pending was acted upon and disposed of. At the conclusion of the session supervisor Petrie, a member of the board, moved that the meeting be adjourned until October 8. Thereupon Mr. Hollinger inquired of Mr. Petrie, in the open session, what the purpose of the adjourned meeting was and what business there was to transact at that adjourned meeting. No answer was given to the question. The motion to adjourn to October 8 carried over the dissenting votes of Messrs. Hollinger and Cunha. Mr. McClellan, another member of the board, had been ill for some considerable time and his condition on October 6 was very serious. The rumor was current at the time that he might resign. Hollinger and Cunha had knowledge on October 6 of this rumor. On October 8, and under that date, supervisor McClellan signed a letter addressed "To the Honorable, The Mayor and Board of Supervisors, City and County of Honolulu, Honolulu, T. H." and reading as follows: "Owing to illness and under the advice of my physician, I hereby tender my resignation as a Supervisor of the City and County of Honolulu, same to become effective Octo-

ber 9th, 1925, at 12:00 o'clock Noon" and handed it to
John H. Wilson, mayor of the City and County of Hono-
lulu. Less than a quorum of the supervisors attended
the meetings of October 8, 9, 10 and 12. At none of these
meetings did the mayor make any public announcement
of the fact that he had received Mr. McClellan's resigna-
tion. He made no such public announcement at any time
or place prior to October 13 and did not, prior to Octo-
ber 13, give the letter into the keeping of the clerk of the
city and county. Prior to the meeting of the super-
visors held on October 13 and attended by the two
respondents as well as by other supervisors neither of the
respondents had any knowledge that Mr. McClellan had
resigned. Whether that letter was handed to the mayor
on October 8 conditionally or was on that date delivered
unconditionally to the mayor does not appear from the
evidence. There was no delivery of the letter to the
supervisors, to whom in conjunction with the mayor it
was addressed, prior to October 13.

William Ahia, a supervisor, was suspended by the
mayor on October 1 and was forcibly removed from the
meetings held on October 5 and 6. He was reinstated by
the mayor on October 12 and attended the meeting of
October 13. For reasons which need not be here enumer-
ated the two respondents believed that the suspension of
supervisor Ahia on October 1 by the mayor was an act
done in bad faith, for the purpose of enabling the mayor,
with the aid of those supervisors who were in the habit of
supporting him at board meetings on questions upon
which the supervisors were divided, to secure the appoint-
ment as successor to Mr. McClellan of some one desired
by them and whose appointment would be deemed unwise
by supervisors Hollinger, Cunha and Ahia. The purpose
of the two respondents in not attending the four meetings
on the days named in October was to prevent the accom-

plishment of this object, if supervisor McClellan should resign, by the mayor and his supporters during the enforced absence of supervisor Ahia.

Our statute while authorizing this court to remove a supervisor for "nonfeasance" gives no definition of that term. But little if any aid is to be found in the books as to what nonfeasance is other than brief general definitions, such as: "an omission to perform a required duty at all, or total neglect of duty" (*Coite* v. *Lynes,* 33 Conn. 109, 115, quoted with approval in the case of *In re Bevins,* 28 Haw. 733, 741); "contumacy in refusing to obey the mandate of the law, and for willfully and unlawfully neglecting to do what was required by the plain terms and import of the statute" (*People* v. *Burnside,* 3 Lans. (N. Y.) 74, 78); and the "neglect or refusal, without sufficient excuse, to perform an act which it was the officer's legal duty * * * to perform" (*State* v. *McClellan,* 85 S. W. 267, 268). It has been stated, however, that "nonattendance is ground for removal only according to the circumstances of each particular case" (23 A. & E. Ency. L. 447); and the following passages from the opinion of Lord Mansfield in *Rex* v. *The Corporation of Wells,* 4 Burrows 1999, 2004, 2005, decided in 1767, are of interest: "I know of no case that says that the bare being once absent is a forfeiture. And in this very case, the counsel for the corporation allow an excuse for his absence in January. So that absence may be excusable. Indeed, a general neglect, or refusal to attend the duty of such an office, is a reason of forfeiture; a determined neglect, a wilful refusal. But a single instance of omitting to attend, when no particular business was expected, nor in fact happened, is a very different case. I think the law is well laid down by Serjeant Hawkins in treating of offences by officers, by neglect or breach of duty. He says, 'It is certain that an officer is liable to a forfeiture

of his office, not only for doing a thing directly contrary to the design of it; but also for neglecting to attend his duty at all usual proper and convenient times and places, whereby any damage shall accrue to those by or for whom he was made an officer. And some have gone so far as to hold, that an office concerning the administration of justice or the commonwealth, shall be forfeited for a bare nonuser, whether any special damage be occasioned thereby or not. But this opinion doth not appear to be warranted by any resolution in point; and the authorities which are cited to maintain it, do not seem to come up to it.' He refers to several books and cases in his margin; and agrees with those authorities that say 'that he who so far neglects a public office, as plainly to appear to take no manner of care of it, should rather be immediately displaced, than the public be in danger of suffering that damage, which can not but be expected some time or other from his negligence.' But nobody can say or even imagine that one single absence from a session, at which nothing of importance was likely to happen, can amount to such a neglect of a recorder's office, as to make him plainly to appear to take no manner of care of it."

Upon reason, not every absence of a supervisor from a meeting of the board constitutes nonfeasance. Not every absence is necessarily unjustifiable and a failure of duty. Absence, for example, may be unavoidably due to illness or to an accident. Under some circumstances there may be even an absence for the purpose of pleasure only, subject perhaps to leave obtained from the board and to the fact that the public interest be not prejudiced thereby. Once it is conceded, as it must be, that not all absences are unjustifiable or constitute nonfeasance, it becomes clear that the circumstances surrounding the absence are relevant and must be considered in determining whether or not it constitutes nonfeasance. It is con-

ceivable that not even every absence without a justifiable excuse can constitute nonfeasance within the meaning of the statute so as to become ground for removal from office. It may be of so trivial a nature, even though technically indefensible, as not to justify removal,—as, for example, in the case of a supervisor, otherwise in all respects faithful, who leaves a meeting against the expressed will of the board when the formal approval of one or more payments of small and undisputed amounts are the only items of public business remaining to be considered.

In the view which we take of the case it is unnecessary to decide whether the absence of the two respondents from the meetings called for October 8, 9, 10 and 12 was a technical violation of their duty. (The meeting of October 8 was an adjourned meeting decided upon at the meeting of October 6, and each of the three later meetings was an adjourned meeting decided upon at the next earlier meeting.) It may be assumed that it was. So, also, it is unnecessary to decide whether in no conceivable case (or in the case at bar) is a failure to attend a meeting, which failure is for the purpose of preventing the mayor and other supervisors from accomplishing that which is deemed by the absentees detrimental to the public interest, justifiable in law or sufficiently extenuated to prevent a removal from office. It may be assumed that it is not justifiable in any conceivable case. In our opinion the failure of the respondents to attend the four meetings in question, if it was a technical violation at all of their duty to the community, was sufficiently extenuated by the fact that there was no public business which could be transacted at any of those meetings, with the exception of a possible resignation of another supervisor, which, so far as the respondents knew, had not yet been presented or tendered. If the letter of resignation

had been delivered by the mayor to the city and county clerk immediately upon its receipt by the mayor it may be that from that time on the respondents would have been chargeable with knowledge of the existence of the resignation, or tender of resignation, whichever it was. R. L. 1925, section 1823, provides that the clerk shall "have the custody of the seal, and of all leases, grants and other documents, records and papers of the city and county." So, also, if the mayor had seen fit to call an extra session of the board as permitted under the provisions of R. L. 1925, section 1789, stating in the call the cause and purpose of the meeting, as required by that section, the respondents would have had actual knowledge of the fact that a resignation had in fact been presented and actual knowledge that public business to that extent was pending for transaction at the meetings. Further, if it were the fact, as it is not, that beginning with October 8 the respondents had knowledge of the existence of a resignation, still, at the worst, their offense, if such it was, in absenting themselves from the four meetings, would be that they had caused a delay in the transaction of the business relating to and consequent upon that resignation from the 8th of October to the 13th of October, a period of five days only. The undisputed evidence in this case shows that although the meeting of October 13 was attended by all of the supervisors in office and took up the matter of the resignation and the appointment of a successor and although many meetings were thereafter held to attend to the same business, a successor was not appointed until February, 1926. (Litigation is now in progress to determine whether or not an appointment was legally made in February, 1926.) We do not find that there was any more than a technical detriment to the public interest by the failure of attention to that item of business from October 8 to October 13.

The evidence is undisputed that at all times during their terms of office, other than those specified and relied upon in the petitions, both respondents have been faithful in their attendance at meetings of the board; and in October they took part in transacting all the public business which was transacted by the board.

In our opinion the respondents' failure of duty, assuming but not deciding that there was a technical failure of duty, did not under the surrounding circumstances constitute nonfeasance within the meaning of the statute or cause for removal.

The petitions are dismissed.

*J. A. Matthewman* (also on the brief) for petitioners.

*A. L. Castle* and *E. H. Beebe* (*Robertson & Castle* and *Thompson, Cathcart & Beebe* on the brief) for respondents.

