STATE ex rel. ODENWALD, Relator, *v.* DISTRICT
COURT et al., Respondents.

(No. 7,373.)

(Submitted October 19, 1934. Decided October 24, 1934.)

[38 Pac. (2d) 269.]

(1)

*Mr. George E. Hurd* and *Mr. C. W. Robison,* for Relator, submitted a brief; *Mr. Hurd* argued the cause orally.

*Mr. E. K. Cheadle, Mr. Merle C. Groene, Mr. John G. Brown* and *Mr. L. V. Ketter,* for Respondents, submitted a brief; *Mr. Cheadle* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Application for writ of supervisory control by the State on the relation of Joseph Odenwald against the district court of the Tenth Judicial District in and for Fergus county, and Honorable O. F. Goddard, Judge presiding therein.

This proceeding was instituted for the correction of alleged manifest error committed by the trial court within jurisdiction, and it is alleged that the remedy by appeal cannot afford adequate relief, that there is no other adequate remedy, and gross injustice is threatened as a result of the ruling.

On May 31, 1934, one E. O. Busby filed a verified accusation against the three county commissioners of Fergus county jointly, charging them with having wilfully refused and neglected to perform their official duties in the management, operation and care of the county poor farm and personal

property thereon. He prayed for their removal from office. At the same time Busby filed separate accusations against each of the commissioners, each of which contains sixteen counts charging wilful and corrupt collection of illegal fees and salary for the performance of alleged official services. Removal from office was prayed.

Citations were issued and issue joined by answers. The four proceedings came on regularly for hearing on July 7, 1934, before Honorable O. F. Goddard, presiding in the stead of Judge E. J. Baker, who was ill. George E. Hurd, Esq., counsel for relator, who was in charge of the proceedings and had prepared the matters for trial, was then confined in a hospital from which he would not be released for thirty days; the forty-day limit for proceeding to trial (sec. 11702, Rev. Codes 1921) was about to expire. For these reasons co-counsel moved the dismissal of the actions and, over the objections of defendants, this motion was granted and the four proceedings were dismissed "without prejudice."

On September 22, 1934, this relator filed his joint and several accusations against the commissioners, which accusations are identical with those made by Busby, except that to each of the individual charges are added two new counts covering the months succeeding the former charges. Again citations were issued. The defendants answered the charges and, in addition, entered a plea in bar to the joint accusations and to the sixteen counts in each of the separate accusations found in the Busby charges, on the ground that the dismissal of the Busby proceedings constituted a bar to further prosecution under the provisions of section 12229 of the Revised Codes of 1921, as each of the matters "was to be tried as an indictment for a misdemeanor." These matters were met by reply.

The four proceedings came on for hearing before Judge Goddard on October 3, 1934, at which time a continuance was had until October 10 to enable the court to determine the question presented on the pleas in bar on briefs to be filed. On October 9, 1934, Judge Goddard made and had entered an order applying to each of the proceedings, sustaining the pleas

in bar, that the proceedings be dismissed and that the defendants have judgment for costs. In this order the court declares that the accusations were "word for word the same" as those made by Busby, "with the exception of two additional accusations"; that the former cases "were not prosecuted or tried within forty days prescribed by the statute, but were, on motion * * * dismissed without prejudice against the protest of the defendants."

Thereupon the relator applied to this court for an order vacating and setting aside Judge Goddard's order and any judgment entered or which might be entered thereafter in the proceedings. An alternative writ was issued commanding the annulment of the order, or that the trial court and judge show cause on October 19, 1934, why they have not done so.

In response to the alternative writ the respondents filed ▮▮▮▮ herein a motion to quash on the ground that the relator does not state facts sufficient to entitle him to the relief sought, and, without waiving their motion, answered. The answer set up the fact that judgments have been entered, on the order, dismissing the proceedings. On the motion the respondents argue that the writ does not lie because an appeal lies from the judgment, and the affidavit and application do not show "exigency."

Speaking of the writ of supervisory control, this court has said: "It has its own appropriate functions and without undertaking to define particularly what these functions are, we think one of them is to enable this court to control the course of litigation in the inferior courts where those courts are proceeding within their jurisdiction, but by mistake of law, or wilful disregard thereof, are doing a gross injustice, and there is no appeal, or the remedy by appeal is inadequate. Under the circumstances, the case being exigent, no relief could be granted under the other powers of this court, and a denial of a speedy remedy would be tantamount to a denial of justice." (*State ex rel. Whiteside* v. *District Court*, 24 Mont. 539, 63 Pac. 395.)

It is true that an appeal lies from the judgments entered, but this fact does not render the writ here considered inapplicable unless the remedy by appeal is a speedy and adequate remedy. (*State ex rel. Spinazza* v. *District Court*, 83 Mont. 511, 273 Pac. 638.) An exigency which will render the ordinary remedy by appeal inadequate may be defined as something arising suddenly out of the current of events; an event or combination of circumstances calling for immediate action or remedy (*United States* v. *Atlantic Coast Line Co.*, 224 Fed. 160); where something helpful needs to be done at once, yet not so pressing as an emergency. (*De Angelis* v. *Laino*, 252 N. Y. Supp. 871, 141 Misc. 518.)

Here, the law (sec. 11702) requires that a speedy trial of the charges be had, and to that end declares that, on the filing of such charges, the officers be cited to appear not more than ten nor less than five days after the accusation is filed, and that "on that day, or some other subsequent day not more than forty days from the date on which the accusation was presented," the court must proceed "to a hearing, in a summary manner, or trial, upon the accusation and the evidence offered in support of the same."

The Odenwald accusations were set down for a speedy hearing or trial, but no hearing or trial "upon the accusation and the evidence" was had; instead, the hearing was continued until October 10, in order to give the trial court time to determine the preliminary question as to whether or not the relator was entitled to have his accusations heard or the defendants should be required to stand trial thereon. That the disposition of the questions raised by a plea in bar to a criminal prosecution—which this plea must be if available to the defendants at all—is but a preliminary matter in nowise connected with the trial, is clearly demonstrated by the rules governing such a plea, to-wit, that a special plea in bar must be entered before the defendant pleads on the merits, and, if it is not, it may be disregarded unless the court in its discretion permits the plea of not guilty to be withdrawn (*Commonwealth* v. *Blake*, 12 Allen (Mass.),

188; *George* v. *State*, 59 Neb. 163, 80 N. W. 486); and where the issue raised by the plea and the state's demurrer or reply thereto is decided against the defendant, he may then plead over and have a trial on his plea of not guilty. (*Fisher* v. *State*, 46 Ala. 717; *Harding* v. *State*, 22 Ark. 210; *State* v. *Reiman*, 19 Del. 73, 50 Atl. 268; *State* v. *Allen*, 91 Me. 358, 39 Atl. 994.) For further discussion see 16 C. J. 414, 415.

Before the day set for the hearing or trial "upon the accusation and evidence" to be "offered in support of" the accusation, i. e., October 10, the court ordered the proceedings dismissed; consequently, the hearing or trial required to be had, or begun, within forty days from the presentation of the accusation, was never started. Under the statute the hearing must be commenced on the merits within forty days after September 22, or by November 1, 1934.

This court will take judicial notice of the statutes and of ▮▮ its rules, and must conclude that an appeal from the order and judgments entered could not be perfected, presented and determined between October 10 and November 1, and relator's right to have his accusations heard within the limit of time prescribed by the statute would be lost by resort to the remedy by appeal. Thus the application here, reciting the facts and the statute under which the application is made, presents an "exigency" in this action in which the public is interested, calling for summary action by this court, and demonstrates that the remedy by appeal is wholly inadequate, thus warranting action by this court. (*State ex rel. Philbrick* v. *District Court*, 58 Mont. 376, 193 Pac. 59; *State ex rel. Bonners Ferry Lumber Co.* v. *District Court*, 69 Mont. 436, 222 Pac. 1050; *State ex rel. Larsen* v. *District Court*, 78 Mont. 435, 254 Pac. 414; *State ex rel. Whorley* v. *District Court*, 88 Mont. 290, 292 Pac. 904; *State ex rel. Thelen* v. *District Court*, 93 Mont. 149, 17 Pac. (2d) 57.)

The motion to quash the alternative writ and dismiss this proceeding is overruled.

Did the dismissal of the Busby proceedings constitute a bar to those instituted by Odenwald? At the outset it is mani-

fest that the plea in bar did not go to the seventeenth and eighteenth accusations in each of the three proceedings against the individual commissioners, for the Busby proceedings charged the collection of illegal fees prior to May 1, while these additional counts charged like collections in the months of May and June of the same year; the challenged order recognized the existence of this fact. On this ground alone we might condemn the judgments and the order in the three individual proceedings (see 33 C. J. 1050); but we need not further consider the matter, unless we find that the plea in bar was good as to the proceedings against the commissioners jointly and as to the sixteen counts in the other three cases.

The plea in bar is grounded on the provisions of section 12229, Revised Codes 1921, which declares that "an order for the dismissal of an action, as provided in this chapter, is a bar to any other prosecution for the same offense, if it is a misdemeanor, but it is not a bar, if the offense is a felony." "This chapter" is Chapter 46 of Part II of the Penal Code. Part II deals with "criminal procedure," and Chapter 46 thereof with "dismissal of actions for want of prosecution and other reasons"; therein section 12223 provides that "the court, unless good cause to the contrary is shown, must order the prosecution dismissed in the following cases: 1. Where a person has been held to answer for a public offense, if an information is not filed against him, within thirty days, or such time has not been extended by the court or judge. 2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six months after the finding of the indictment, or filing of the information." Section 12227 provides that "the court may, either of its own motion, or upon the application of the county attorney, and in furtherance of justice, order an action, information or indictment to be dismissed."

It is clear, therefore, that if the order sustaining the plea in bar is sustained, it must be sustained upon the ground that these proceedings are criminal "prosecutions," and section 11702, above, defines a misdemeanor.

If a "public offense," within the contemplation of Chapter 46, above, is defined in section 11702, it is not a felony as defined in section 10723 of the Revised Codes of 1921, and therefore must be a misdemeanor.

This question has been given consideration by this court in a number of decisions. Prior to 1917 such actions were governed by the provisions of section 9006 of the Codes of 1907, and, in construing that section, Chief Justice Brantly, speaking for the court, declared: "It is evident that the legislature intended to make this proceeding a *quasi*-criminal prosecution." (*State ex rel. Rowe* v. *District Court*, 44 Mont. 318, 119 Pac. 1103, Ann. Cas. 1913B, 396.) "Yet, since under section 9006, the result of a conviction is removal from office, and this is defined by section 8107 [now sec. 10721 of the Revised Codes of 1921] as a punishment for a crime, the qualifying term '*quasi*' might well have been omitted. (*State ex rel. McGrade* v. *District Court*, 52 Mont. 371, 157 Pac. 1157.) However, when the contention was made that section 9006 was unconstitutional as violating the constitutional guaranty of a jury trial in criminal cases and the provision that all such cases shall be prosecuted by information or indictment and conducted by the public prosecutor (sec. 8, Art. III, and sec. 27, Art. VIII, Constitution), Mr. Justice Holloway, speaking for the court, characterized the expressions found in the *McGrade Case* as "*dicta*," quoted from the *Rowe Case* and, explaining that "doubtless it would be more nearly accurate to say that the proceeding is a special statutory one and avoid any attempt at arbitrary classification," declared the law unconstitutional. Chief Justice Brantly concurred. (*State ex rel. Payne* v. *District Court*, 53 Mont. 350, 165 Pac. 294.)

In 1917 the law was amended to read as we now find it in section 11702. (Sec. 1, Chap. 25, Laws of 1917.) The change in the law is clearly pointed out by Mr. Justice Holloway, for the court, as follows: "Not only are the two statutes radically different in matter of procedure, but the very basis of the right is changed altogether. The gist of the offense

defined in section 9006 was taking illegal fees, whether done ignorantly, in good faith, or with a dishonest purpose. The gist of the offense defined in the amended statute is the criminal intent. Under the original statute the accused was not entitled to a jury trial, but he is under the new Act." (*State ex rel. Paige* v. *District Court,* 54 Mont. 332, 169 Pac. 1180.)

In the *Paige Case* there is no reference to the nature of the action other than the statement, made in holding that the action arising under the old law did not survive, that "in this state we have no general saving clause provided by Constitution or statute for offenses other than those prosecuted by indictment or information." This statement would indicate that the court considered the proceeding as in the nature of a prosecution for a criminal offense.

The next question raised in such a proceeding was as to whether or not the provision for the disqualification of judges in civil actions (subd. 4, sec. 8868, Rev. Codes 1921) applied. Mr. Justice Reynolds, speaking for the court, declared that there is no substantial difference between the removal of an officer by the senate on impeachment, and such removal before some other tribunal, and that, as "impeachment proceedings are criminal in nature," it follows that "proceedings to remove other officers are likewise criminal in their nature." (*State ex rel. Houston* v. *District Court,* 61 Mont. 558, 202 Pac. 756.) The majority opinion, concurred in by Chief Justice Brantly, commenting on the *Payne Case,* declared: "We cannot say that this holding of the court is in any sense inconsistent with the decisions in the *Rowe* and *McGrade Cases.* The *Payne Case* does not hold that such a proceeding is not criminal in its nature, but merely that it is not a criminal action in the sense that the public prosecutor must conduct the proceedings." Mr. Justice Galen, concurring specially on the ground of *stare decisis,* said: "Were the question a new one, I should place such proceedings in the category of civil actions." Mr. Justice Holloway wrote a vigorous and lengthy dissenting opinion to uphold his contention that the *Rowe Case* is based

upon inapplicable California decisions, is wrong in principle, and "without any foundation"; that the *McGrade Case* merely follows the *Rowe Case,* and that both were disapproved in the *Payne Case* "to the extent of holding that the proceeding is a special statutory one, subject to the analysis there made."

In less than four months the question was again presented to the court, the membership being the same, except that Mr. Justice Reynolds was absent, on the contention made that the charges involved a "criminal prosecution" and, therefore, the defendant was entitled to a jury trial as a matter of right. In denying this right, the court declared that "removal proceedings are special and statutory"; it reviewed the former decisions and the law relative to criminal prosecutions, and distinguished the proceedings from prosecutions, saying: "When the judgment is entered and executed by removal from office, the statute has spent its force without loss to the accused of any of the constitutional guaranties, including the right to trial by jury in a 'criminal prosecution.'" (*State ex rel. Bullock* v. *District Court,* 62 Mont. 600, 205 Pac. 955.)

Finally, in a case similar to this, Chief Justice Callaway, speaking for the court, reviewed the statutory procedure for the removal of a county commissioner and appeal from the judgment, and declared that "however it is characterized," such a proceeding is not governed by the rules of pleading and practice in criminal cases, but rather those applicable to civil actions. (*State ex rel. King* v. *District Court,* 95 Mont. 400, 26 Pac. (2d) 966.)

In the *King Case* the court rejected the "trial court's theory" that, "as a proceeding of this character is *quasi*-criminal, * * * it is to be governed by the rules of pleading and practice in criminal cases," and the syllabus, by the court, declares: "A proceeding to remove a public officer [county commissioner] for collecting illegal fees is not a *quasi*-criminal one, * *. * ."

The argument here presented would be more persuasive in a proceeding for the removal of an officer for malfeasance or misfeasance in office, wherein the charges must be presented by indictment and prosecuted by the county attorney. (Secs. 11688, 11690, Rev. Codes 1921.) The acts here charged are classified by the legislature, however, merely as constituting nonfeasance in office, which classification it had a right to make if it saw fit. (*State ex rel. Hessler* v. *District Court,* 64 Mont. 296, 209 Pac. 1052.)

It is true that section 11702 provides that, when the charge is for collecting illegal fees or salary—which would constitute a charge of malfeasance rather than nonfeasance, were it not for the legislative classification—the *trial* must be "conducted in all respects and in the same manner as the trial of an indictment for a misdemeanor," but the fact that the legislature thought it necessary to incorporate such provision in the statute indicates that that body did not consider the proceeding, in fact, a criminal prosecution, or that the rules of procedure in criminal trials were applicable without specifically making them so. In the *King Case* it is pointed out that all steps, other than those on the trial, are taken under the rules governing the practice in civil cases and the trial results in an ordinary civil judgment, carrying costs.

Whatever may have been the effect of the *Payne Case* upon the declarations found in the *Rowe* and *McGrade Cases* to the effect that such proceedings are either criminal or *quasi-*criminal prosecutions, those declarations are clearly disapproved in the *King Case*.

Section 12229, above, has no application to the instant proceeding.

It is, however, further urged that, as the Busby proceedings were not brought to trial within the forty-day limit, further prosecution on the charges there made is barred.

Whether or not Busby could have instituted new actions is not before us; he did not attempt to do so. But under the civil practice a judgment dismissing an action is no bar to a new action "for the same cause of action" unless the judg-

ment expressly declares, or it appears from the judgment-roll, that it was rendered on the merits. (Sec. 9320, Rev. Codes 1921; *Glass* v. *Basin & Bay State Min. Co.*, 34 Mont. 88, 85 Pac. 746; *Arnold* v. *Genzberger*, 96 Mont. 358, 31 Pac. (2d) 296.)

Here it is apparent that both the judgment and the judgment-roll show the contrary; no question on the merits had been reached when the actions were dismissed "without prejudice."

In a matter of public interest, such as this, public policy ▮ should prevent the institution and dismissal of such a proceeding by one taxpayer, from barring the whole body of taxpayers from obtaining any relief; were it not so, the law would furnish to the unscrupulous officer a convenient method of preventing an investigation of his wilful and wrongful looting of the treasury.

The extent of the statutory requirement is that, when an ▮ accusation is presented, the hearing, or trial, must be commenced thereon within forty days. This is in no sense a statute of limitation against the prosecution of the charges made. Of course, as the statute contemplates a speedy trial in such matters, delays by presentation and dismissal for the purpose of delay should not be countenanced, but this is a matter under the control of the trial court on motion for leave to dismiss.

There is no merit in this final contention.

The writ will issue directing the district court of Fergus county to vacate the judgments entered, annul the order of Judge Goddard, and proceed to a hearing on the accusations, as required by law.

ASSOCIATE JUSTICES STEWART and ANDERSON concur.

MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE ANGSTMAN not sitting.