BIERY, APPELLANT, *v.* CITY OF LIMA ET AL., APPELLEES.

(No. 1396—Decided September 26, 1969.)

*Mr. Robert L. Balyeat,* for appellant.
*Mr. John R. Evans,* law director, for appellees.

*Per Curiam.* This appeal is before this court on questions of law and fact. The plaintiff, Richard J. Biery, appellant herein, seeks a permanent injunction against the city of Lima and its contractor to enjoin them from entering into possession of an easement located on the plaintiff's property for the purpose of constructing a water supply line to convey raw water from a pumping station on the Auglaize River to a five billion gallon reservoir now

under construction by the city. In an earlier proceeding for a temporary injunction in the case of *Pisle* v. *Lima*, Allen County No. 1390, this court held, in effect, that in the absence of the existence of a time of public exigency, as defined and qualified by Section 19, Article I (Bill of Rights), of the Constitution of Ohio, the city of Lima and its contractor could not enter into possession of a similar easement on the Pisle premises without compensation therefor having first been assessed by a jury and, as so assessed, having been made in money, or secured to be paid by a deposit of money, and that the provisions of Section 163.06 (A), Revised Code, inconsistent with such holding are unconstitutional. *Wagner* v. *Railway Co.*, 38 Ohio St. 32, 36. The sole determinative issue remaining to be decided in this appeal on the general issue of whether a permanent injunction should be granted is whether a time of public exigency exists in this case, as defined and qualified by the Constitution.

It appears from the pleadings and the evidence, which is largely undisputed, and we find, that the proposed pipe line will constitute the sole method to fill the reservoir with raw water; that the pipe line can not be completed without possession of the easements; that the city of Lima is constructing the reservoir to satisfy the projected needs of the city of Lima and other nearby municipalities and their respective private and industrial water customers for water supply to approximately the year 2010; that existing reservoirs of approximately five and one tenth billion gallons capacity have supplied all the needs of the city of Lima and its water customers in recent years but that during the first half of 1969 the average daily consumption of water has exceeded the dependable daily yield of water from raw water sources; that there is no existing water shortage; that the dependable daily yield is determined from statistical records and relates to statistics for the dryest years on record, specifically the period of 1931 to 1935, inclusive; that the average actual daily yield from raw water sources has in recent years been and is now in excess of the average daily consumption; that precipitation

and supply conditions may not be accurately forecast and that all water supply planning must be based on anticipation of the worst precipitation and supply conditions rather than the best; and that based on the anticipation of such worst conditions the excess of anticipated consumption from existing reservoirs over the anticipated supply thereto would result in the eventual exhaustion of the water stored in such reservoirs and that if there were no water available to replenish such supply the existing reservoirs would be completely drained in from nine to ten months.

As here pertinent, Section 19, Article I, of the Ohio Constitution, permits a quick take of private property without assessment of compensation by a jury only "when taken *in time of war or other public exigency, imperatively requiring its immediate seizure.*" (Emphasis added.) Obviously the easement involved is not being taken in time of war imperatively requiring its immediate seizure. Is it then being taken in time of other public exigency imperatively requiring its immediate seizure?

The word "exigency" has been variously defined, sometimes being defined synonymously with "emergency" and "crisis" and sometimes being distinguished therefrom. 35 Corpus Juris Secundum 222, Exigency; 29A Corpus Juris Secundum 140, Emergency; and 24B Corpus Juris Secundum 718, Crisis.

In *Marion* v. *Haynes* (1914), 157 Ky. 687, 699, 164 S. W. 79, the Kentucky Court of Appeals cited with approval a quotation from an unidentified leading author that "An exigency is an occasion of urgency and suddenness, where something helpful needs to be done at once; an emergency is more pressing, and naturally less common than an exigency; a crisis is an emergency, on the outcome of which everything depends."

In *De Angelis* v. *Laino* (1931), 141 Misc. 518, 252 N. Y. S. 871, the Supreme Court of New York cited with approval the foregoing Kentucky distinction between an emergency and an exigency.

In *State, ex rel. Odenwald,* v. *District Court* (1934), 98 Mont. 1, 38 P. 2d 269, 271, in citing the foregoing New

York case, the Supreme Court of Montana said that "an exigency which will render the ordinary remedy by appeal inadequate may be defined as something arising suddenly out of the current of events; an event or combination of circumstances calling for immediate action or remedy * * *; where something helpful needs to be done at once, yet not so pressing as an emergency * * *."

In *County of Los Angeles* v. *Payne* (1937), 8 Cal. 2d 563, at 572, 66 P. 2d 658, the Supreme Court of California said with approval, "Among the definitions of emergency * * * are 'pressing necessity,' 'exigency.' 'Exigency' in turn is defined by Webster as 'a case demanding immediate action or remedy.' * * *"

In Webster's Third New International Dictionary "exigency" is defined as "the quality or state of being exigent," and "exigent" is defined as "a time of crisis or need," "exacting or requiring immediate aid or action; PRESSING, CRITICAL."

It will be observed that the phrase dealing with the public exigency with which we are here concerned is "in time of war or other public exigency." It is apparent from this that the framers of our Constitution considered war a public exigency and that a public exigency other than war would be of similar gravity. It will further be observed that the existence of "time of war" or the existence of "time of other public exigency," respectively, are not, in and of themselves, sufficient to justify a quick take of property without compensation having been assessed and paid, or secured to be paid. Before a quick take is justified, these respective circumstances must further be of such nature as to *imperatively* require the immediate seizure of the property. In this context, Webster's Third New International Dictionary defines "imperative" as being "an unavoidable fact compelling or insistently calling for action." We conclude that this comparison with time of war and this qualification of imperativeness imposed by our Constitution on the words "time of public exigency" raise the character of such exigency beyond that of an ordinary exigency as defined in the first three cases hereinbefore cited to that of

an emergency. We, therefore, further conclude that in the context of, and as qualified by Section 19, Article I, of the Constitution of Ohio, a "time of public exigency" permitting the immediate seizure of private property for public use without compensation therefor having first been assessed by a jury and paid, or secured to be paid, is an occasion of unavoidable urgency and suddenness compelling or insistently calling for immediate action or remedy.

We further conclude on the evidence that the water supply situation here attempted to be solved by the construction of a reservoir with its incidental pumping stations and water lines is not an occasion of unavoidable urgency. There is no existing water shortage. Although factors of existing reservoir capacity and experience and projected figures as to average daily consumption and dependable daily yield dictate that in considerations of sound water management (and to prevent a public exigency) the existing facilities should be expanded by the construction of additional facilities it cannot be said with any degree of certainty that in the absence of new facilities the city of Lima will suffer a water shortage in the foreseeable future. If the actual water yield, as contrasted with dependable water yield, continues at the same level in the future as it has in recent years raw water supplied to existing storage facilities will continue to exceed the amount consumed therefrom and will do so until such consumption amount reaches a greater level than today's consumption. On the other hand the occurrence of conditions of dryness will diminish stored supplies to the extent that consumption exceeds water yield. Assuming that the rate of consumption continues at the same level as today and that storage is replenished at only the rate of dependable daily yield the existing supply of water in storage of four and six tenths billion gallons would not be exhausted for eighteen years. Even the occurrence of the catastrophic condition of no raw water availability would not result in the exhaustion of existing reservoir water supplies for at least nine or ten months.

The element of suddenness is also lacking. There has

been no sudden diminishment of the water supply. The need of providing for a greater water supply has not been brought about by a sudden failure of water sources or stored supply but by a gradual increase of water consumption.

The pressure now existing on the city to obtain immediate possession of the easement in question is not by reason of an existing and unavoidable water shortage but exists in part because of its failure to initiate an appropriation action at the earliest possible time and in part on the failure of the trial court to abide by the directory provisions of Section 163.09, Revised Code, to fix a time, within twenty days after such appropriation action is ready to be heard, for the assessment of compensation by a jury.

It is the judgment of this court, on the issues joined in this appeal, that the defendant city and its contractor be permanently enjoined from entering into possession of the easement involved until compensation therefor has first been assessed by a jury and, as so assessed, been made in money, or secured to be paid by a deposit of money. This judgment supersedes the judgment of the trial court denying a permanent injunction.

*Judgment accordingly.*

YOUNGER, J. (Presiding), and GUERNSEY, J., concur.
COLE, P. J., not participating.

This appeal submitted to a two-judge panel by agreement of the parties.