## Coalton v. Atkins
*[Cite as 7 AOA 105]*

*Case No. 608*
*Jackson County, (4th)*
*Decided September 26, 1990*

*D. Jeffery Rengel, Rengel, Licata and Crosby Co., L.P.A., Sandusky, Ohio for Appellants and Cross-Appellees.*

*Leonard Holzapfel, Wellston, Ohio, for Appellee and Cross-Appellant.*

STEPHENSON, J.

This is an appeal by Donald C. Atkins and Helen Atkins, defendants below and appellants herein, from a judgment entered by the Jackson County Court of Common Pleas upon a jury verdict wherein appellants were awarded the sum of $39,000 for property of appellants taken in an eminent domain proceeding instituted by the Village of Coalton, Jackson County, Ohio, a municipal corporation, plaintiff below and cross-appellant herein.[1]

Although not designated as such as required by App. R. 16(A) (2), appellants assign the following as errors:

"I. THE JURY VERDICT WAS ARBITRARY AND CAPRICIOUS WHEN THE ONLY WITNESS FOR THE APPROPRIATING AUTHORITY FAILED TO RENDER AN OPINION AS TO THE VALUE OF THE APPROPRIATED PROPERTY WITHIN A REASONABLE DEGREE OF APPRAISAL CERTAINTY.

"II. THE TRIAL COURT ERRED IN NOT REQUIRING THE PRODUCTION IN OPEN COURT OF PUBLIC RECORDS; THE CONTENTS OF WHICH WERE RELIED UPON AND ORALLY PRESENTED FOR THE TRUTH OF THE MATTERS CONTAINED THEREIN BY THE EXPERT WITNESS FOR THE APPROPRIATING AUTHORITY.

"III. IT IS PREJUDICIAL ERROR TO PERMIT AN EXPERT FOR THE APPROPRIATING AUTHORITY TO TESTIFY REGARDING THE SALES AND VALUATIONS OF OTHER COMPARABLE PROPERTIES WHEN HIS KNOWLEDGE AS TO SAID SALES AND VALUATIONS IS BASED SOLELY AND EXCLUSIVELY ON INFORMATION GLEANED FROM EXAMINATION OF PUBLIC RECORDS.

"IV. THE JURY VERDICT WAS NOT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN LESS WEIGHT WAS GIVEN TO THE OPINION OF APPELLEE'S EXPERT THAN THE LANDOWNER.

"V. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN IN [sic] PROCEEDING FORWARD WITH A COMPENSATION HEARING WHEN THE APPROPRIATING AUTHORITY HAS FAILED TO FOLLOW PROPER APPROPRIATION PROCEDURES."

The Village of Coalton, cross-appellant, assigns the following error:

"The verdict of the jury was against the manifest weight of the evidence in that there was no evidence to support the jury's verdict."

The following facts, pertinent to this appeal, appears in the record. On May 17, 1988, the Village of Coalton (hereinafter referred to as Village) filed a petition for appropriation pursuant to R.C. Chapter 163. In substance the petition averred appellants were owners of property sought to be appropriated, that the appropriation was for a parcel of .4944 acres to construct a waste water treatment plant to serve the Village and for an easement of .0711 acres to and from said plant and the parties could not agree upon a purchase price. The resolution of the Village was not attached or contained in the petition as required by R.C. 163.03(B).[2]

On May 27, 1988 the then counsel for appellants filed the following answer:

"Now come Donald C. Adkins and Helen Adkins and for their answer to the Petition for Appropriation deny the statement of the purpose of the appropriation; deny that the Village of Coalton has a right to appropriate all of the property sought to appropriated; admit the legal description; admit to the parties having an apparent interest therein and admit that the Village of Coalton, Ohio has been unable to agree with the owners thereof for the purchase of certain parcels of real property.

"2. These answering Defendants further deny that the Village of Coalton has complied with the provisions of Section 163.04 of the Revised Code of Ohio."

On September 9, 1988 the Village filed a statement of intention to take possession of the property appropriated and deposited the sum of $4,800. with the Clerk of the Jackson County Common Pleas Court. On September 19, 1988, the Village filed an amended petition reciting the intention to appropriate three parcels consisting of a 1.4944 acre in fee, a permanent easement and a temporary easement.[3] Immediately prior to trial, motions for dismissal were made by appellants on the basis of defects in instituting the appropriation and overruled.[4]

At trial, pursuant to R.C. 163.12, appellants presented their evidence which constituted only the testimony of appellant Donald C. Atkins.[5] He testified, in substance, that his father had purchased the property in 1948 then consisting of 109 acres, in Coal Township and that in 1973 appellants purchased it from his father for $21,000. At that time, the property consisted of an eighty-one acre tract. The witness testified as to the advantages of his property by reason of being adjacent to the Village of Coalton, the lay of the land, the number of adjacent roads and the availability of water. Further, that even though it was used for agriculture purposes, he testified it was suitable for building lots which would be undesirable by reason of the odor from a waste water plant.

Although he admitted he did not know the fair market value of properties in the neighborhood, as an owner he testified, without objection, as follows:

"Q. I'm sure you've had an opportunity to maul [sic] over in your mind these proceedings the last year, short of a year, have you had any opinion formed as to what you think the value of the property for the sewage treatment is, taking into account the resulting reduction in the value of the rest of your property and the reduction in your ability to have the water rights and the mineral rights to the rest of your property?

"A. Well, this has been a real problem for me because it is an area that I'd rather not be in. I just wish that I could could [sic] go sleep and it wouldn't be there the next day but it is always there and I have asked that they go somewhere else and go into an area that was different than this because of what it would do to our property and it has cost us to try to defend our entity, if you will, for the damage it does which will be forever if they put the plant there. Eighty thousand dollars would be nominal as to the damage it would do to the property, in my opinion."

The Village presented as an expert witness a real estate agent who had been in the business for fifteen years and had been a broker since 1977. He testified that he did real estate appraising, had taken an appraisal course in 1982 and 1983, and had in the last ten years made a hundred appraisals of vacant land. Over objection, the court permitted him to testify as an expert witness.

In substance, the witness testified that he first determined by the use of comparable sales, the 81 acres before the take had a fair market value of $32,000. He then determined that the fair market value of the property taken, including in that figure the permanent easement, was $3,060. He then concluded the damage to the property after the take was $1,500. He then added the $3,060. and the $1,500. damage figure and subtracted it from the $32,000. and

concluded the residue after the appropriation of $27,440. He testified the fair market value of the temporary easement was $500.00. According to the witness, appellants should receive $5,060.00.

Three separate verdict forms were submitted to the jury. The jury returned a verdict of $3,000.00 for the 1.4 acres of land taken, with damage to the residence of $35,000. The jury awarded $500.00 each for the permanent and temporary easement with no damage to the residence. Appellants urge in this court that we reverse and remand to the trial court to enter judgment in their favor in the sum of $80,000. The Village urges that we reverse and enter judgment in the amount of $5,060 or, alternatively order a new trial. We initially consider the assignment of error of the Village as cross-appellant. It is readily apparent that the testimony offered by each party was flawed in several material respects and was contrary to accepted rules respecting presentation of evidence in an eminent domain proceedings as to ascertaining the amount of compensation for land taken and damages to the residence. The proper method of presenting valuation testimony is set forth in *Masheter v. Kebe* (1973) 34 Ohio App. 2d 32, 36 as follows:

"The proper procedure to be followed is for the expert to give his opinion as to the value of the property prior to the taking and the value of the residue after the taking. *Ry. Co. v. Gardner* (1887), 45 Ohio St. 309; *Cleveland and Pittsburgh Railway Co. v. Ball* (1856), 5 Ohio St. 569. *City of Columbus v. Zanes* (1964), 120 Ohio App. 229; *American Louisiana Pipe Line Co. v. Kennerk* (1957), 103 Ohio App. 133. Holding that it was improper for a witness to state his opinion of the amount of damages arising from an appropriation of property without giving an opinion as to the value of the property before and after the appropriation, the court in *Ry. Co. v. Gardner* at page 322 commented as follows:

"'It is too well settled in this state to admit of controversy that the true rule of damages in such cases is the difference in the value of the property affected before and the value after the location of the railroad, and that this is to be determined by the jury in the light of the facts established by the evidence, and not upon the mere opinions of witnesses, except so far as opinions may be received upon questions of value. *Atlantic & G.W.R. Co. v. Campbell* (1855), 4 Ohio St. 583; followed and approved in *Cleveland & P.R. Co. v. Ball* (1856), 5 Ohio St.

568. In each of these cases witnesses were allowed to testify to their opinions concerning the amount of damages sustained, and in each case this was held to be error and the judgment reversed. The jury is entitled to be informed by witnesses concerning the value of the land before, and the value of it after, the location of the road. These are the primary facts which enable the jury to determine the extent of the injury. If it be contended that when a witness has stated what, in his opinion, is the difference in the value of the land before and after the location of the road, or how much less it is worth after than before, he has substantially stated the substantive fact to be ascertained, the obvious answer is that he is, by this form of inquiry, left to estimate in his own mind the amount of damages sustained, and give this to the jury as the difference in value. There is no assurance that he will, in making his estimate, take into account the actual value, before and after the location of the road. Indeed, there is no assurance that he may have an intelligent opinion of the value of the land affected either before or after such location except that he has qualified himself, in the opinion of the court, as a witness.'

"Analogously, it is error to permit a witness to state his naked opinion of the value of the land taken without first considering the value of the entire tract before the appropriation and the value of the residue. By testifying only as to the value of the land taken, the witnesses were not very helpful to the jury. Their testimony constituted a naked conclusion and invaded the province of the jury on one of the issues on which it was to decide. *Fowler v. Delaplain* (1909), 79 Ohio St. 279; *In re Appropriation by the Director of Highways* (1963), 120 Ohio App. 273. R.C. 163.14 requires the jury to determine separately the value of the land taken and damages to the residue. Therefore, after the expert witness has stated his opinion as to the value of the tract and of the residue, he should be permitted to assist the jury by making the mathematical calculations as to the value of the land taken as part of the entire tract and as to the damage to the residue. *American Louisiana Pipe Line Co. v. Kennerk,* supra."

The rule prohibiting "damage testimony" applies not only to expert witnesses but when an owner is permitted to testify. *Powers v. Railway Co.* (1878), 33 Ohio St. 429, 437; *Railway Co. v. Gardner* (1887) 45 Ohio St. 309.

The testimony of Mr. Atkins that he was "damaged" in the sum of $80,000 was therefore improper for the reasons stated in *Masheter v. Kebe, supra* and authorities therein cited. Admittedly, it was before the jury for what it was worth because no objection was interposed. Manifestly, such conclusionary testimony was not worth much to aid the jury because (1) it did not give the opinion of the witness of the value of the whole tract before the take (2) did not give the opinion of the witness as to the value of the residue after the take and (3) did not give an opinion as to the value of the land taken.

We conclude the testimony of the expert testimony for the Village was also improper in part. This witness did properly determine the fair market of the whole tract before the take. However, the witness did not determine the fair market value of the residue after the take as required but instead determined the fair market value of the residue by adding the fair market value of the take and his opinion of damage to residue and deducting that sum from the fair market value of the whole tract before the take. Further, the witness did not separately determine the fair market value of the permanent easement but included it in the take in fee along with the 1.4 acre parcel. The court properly instructed the jury as to the distinction between a taking in fee and easement and submitted appropriate verdict forms. However, there was no evidence before the jury as to the fair market value of the permanent easement and the verdict of the jury that the fair market value of the permanent easement was $500.00 with no damage to residue was necessarily conjectural since no evidence of such value was adduced. In most appropriation cases, the valuation evidence of the owner and appropriator will usually vary in amounts. As long as the verdict is within the range of all the valuation testimony, a judgment will not be reversed on weight of the evidence. 38 Ohio Jurisprudence 3d (1982) 578, Eminent Domain, at fn. 16 and authorities cited therein.

While expert valuation testimony is only advisory, the jury cannot, without adequate reason demonstrated in record, return a verdict completely contrary to the evidence before it. Knepper and Frey, Ohio Eminent Domain Practice (1977) 260. A pivotal fact is that the *only* evidence of the fair market value of the 81 acres prior to the take was $32,000. The jury necessarily disregarded such valuation by concluding the tract had a markedly higher fair market before the take since it returned a verdict of damage to the residue of $35,000. We are fully convinced on the evidence before us that the judgment is not supported by and is against the manifest weight of the evidence. "(A)ny owner who is involuntarily deprived of his property by an appropriation proceeding should be accorded just and adequate compensation for his loss, but that does not mean that the appropriator should be penalized by requiring it to pay a greater sum than the true value of the property taken, considering all proper and pertinent factors." In re App. By Ohio Turnpike Comm. 164 Ohio St. 377 (1955).

The Village's assignment of error in the cross-appeal is sustained, and, but for the dissent of Judge Grey, would require a reversal and remand for a new trial.[6]

We respect to appellant's appeal we outright reject the assertion that this court should increase the jury award to $80,000. This court has no such authority. In re Approp. By Ohio Turnpike Comm. (1955) 101 Ohio App. 474.

Appellants' first three assignments of error are directed to the qualifications of the expert witness for the Village and the adequacy of his testimony. In *Ohio Turnpike Comm. v. Ellis* (1955) 114 Ohio St. 377 the court held in the eighth paragraph of the syllabus as follows:

"The qualification or competency of a witness to testify as an expert or to give his opinion on a particular subject rests with the trial court, and, on appeal, its rulings with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion."

Given the background of the witness as a real estate agent and broker in Jackson County, his knowledge of real estate values therein, appraisal courses taken in 1982 and 1983, and the large number of appraisals done for lending institutions and attorneys we perceive no abuse of discretion in permitting the witness to testify as an expert witness.

Appellants further complain that the Village expert witness did not testify as to the date of his valuation testimony. No objection was made on that ground at trial and, accordingly such issue was not saved for appellate review. The trial court instructed the jury that it should determine the award as of October 27, 1988, which was the date the Village took possession. While the witness made his appraisal at the end of 1987, there was testimony from

which it was inferable the value did not change in such time frame because of limited market activities in the area.

Finally, appellant complains that the witness for the Village relied upon public records alone to determine comparable sales and failed to introduce the records at trial. It is not clear in the records which public records were examined. Presumedly, the witness used the federal tax stamp on deeds to determine sale prices. The witness testified he examined one of the parcels utilized for comparable sales and was familiar generally with the others; therefore, reliance was not solely upon the tax stamp calculation.

In *Twinpike Comm. v. Ellis*, (1955), 164 Ohio St. 377, the court stated at 382 the following:

"As to the third error listed, Charles G. Schenck of Columbus, Ohio, was called as a witness by the commission. He qualified himself as an expert of long and extensive experience in appraising and evaluating all kinds of real property in different parts of Ohio. He testified that he spent seven full days in making a thorough investigation and study of the Ellis land, including inquiries of those familiar with real estate values in Lucas County and an inspection of the Ellis land. According to his testimony he took into account every pertinent factor bearing upon value which embraced the highest and best practical uses to which the property might be put. True, Schenck did note the revenue stamps on deeds conveying adjoining and nearby properties to ascertain the prices for which they had been sold, but from the examination of his entire testimony it is clear that this was but a single factor in the reaching of his opinion as to the value of Ellis' appropriated lands.

"In *Ramming Real Estate Co. v. United States* (C.C.A., 8), 122 F. (2d), 892, 895, an appropriation proceeding brought by the United States, the court had the following to say concerning the testimony of a witness who expressed his opinion as to the value of the land there appropriated:

"'*** He also took into consideration the revenue stamps which were affixed to the deeds. These were attached pursuant to federal statute, the violation of which is made a crime. With this sanction, we think the amount of revenue stamps attached to the deeds may be said to have been a reliable source of information as to the amount of the consideration paid

for the property described therein. Here, again, the argument is one that may well have been addressed to the jury as affecting the weight of the testimony, rather than going to its admissibility. We think there was no abuse of discretion in admitting this testimony which the witness said he had taken into consideration in arriving at the fair market value of the property in controversy.'"

The further contention of appellants is that the Village witness should have introduced the records concerning his comparables. While such testimony is admissible on direct examination as substantive evidence, *see Masheter v. Hoffman* (1973) 34 Ohio St. 2d 213, we are unaware of any rule requiring the public records considered by the witnesses in determining comparable sales to be introduced as part of his testimony and appellant cite no such authority.

The first, second, and third assignments of error are overruled.

The fourth assignment of error is not a claim of error but simply a statement of law and is overruled even if it may be correct as an abstract proposition of law.

The fifth assignment of error asserts certain irregularities in institution of the appropriation proceeding which required its dismissal. The claimed defects are the following:

"(1) The Village did not negotiate with appellants.

"(2) There must be a showing of necessity for the appropriation and the purpose.

"(3) A copy of the resolution must be attached to the petition.

"(4) Trial was not held in twenty days as required by statute."

The applicable statutes, in the part here pertinent, are the following:

R.C. 163.04

"Appropriations shall be made only after the agency is unable to agree, for any reason, with the owner, or if more than one, any owner, or his guardian or trustee, or when any owner is incapable of contracting in person or by agent and has no guardian or trustee, or is unknown, or is not a resident of this state, or his residence is unknown to the agency and cannot with reasonable diligence be ascertained."

R.C. 163.05

"An agency which has met the requirements of section 163.04 of the Revised Code, may commence proceedings in a proper court by filing a petition for appropriation of each parcel

or contiguous parcels in a single common ownership, or interest or right therein. The petition of a private agency shall be verified as in a civil action and all petitions shall contain:

"(A) A description of each parcel of land or interest or right therein sought to be appropriated, such as will permit ready identification of the land involved;

"(B) In the case of a private agency, a statement that such appropriation is necessary, and, in the case of a public agency, a copy of the resolution of the public agency to appropriate;

"(C) A statement of the purpose of the appropriation;

"(D) A statement of the estate or interest sought to be appropriated;

"(E) The names and addresses of the owners, so far as they can be ascertained;

"(F) A statement showing requirements of section 163.04 of the Revised Code have been met;

"(G) A prayer for the appropriation."

R.C. 163.08

"Any owner may file an answer to such petition. Such answer shall be verified as in a civil action and shall contain a general denial or specific denial of each material allegation not admitted. The agency's right to make the appropriation, the inability of the parties to agree, and the necessity for the appropriation shall be resolved by the court in favor of the agency unless such matters are specifically denied in the answer and the facts relied upon in support of such denial are set forth therein."

R.C. 163.09

"(B) When an answer is filed pursuant to section 163.08 of the Revised Code and any of the matters relating to the right to make the appropriation, the inability of the parties to agree, or the necessity for the appropriation are specifically denied in the manner provided in such section, the court shall set a day, not less than five or more than fifteen days from the date the answer was filed, to hear such questions.

"***

"(C) When an answer is filed pursuant to section 163.08 of the revised Code, and none of the matters set forth in division (B) of this section is specifically denied, the court shall fix a time within twenty days from the date the answer was filed for the assessment of compensation by a jury."

With respect to the claim that the negotiation requirement in R.C. 163.04 was not met, the answer of appellants to the initial petition averred appellants "admit that the Village of Coalton, Ohio has been unable to agree with the owners thereof for the purchase of certain parcels of real estate." This constitutes an admission that negotiations did take place.

With respect to the requirement a showing of the right to make the appropriation and the necessity therefore, such determination under R.C. 163.08 is required only if there is a specific denial and the facts relied upon are set forth in the answer. The answer to the initial petition fails to aver such facts, and no hearing was necessary. *Ohio Edison v. Consol. Rail Corp.* (1984) 20 Ohio App. 3d 307. Additionally, no answer was filed to the amended petition upon which trial was had. With respect to the attachment of a copy of the resolution as required by R.C. 163.05(B); this was specifically belatedly allowed by the court prior to trial. *See* Ft. 1.

Finally, with respect to holding the trial within twenty days of the answer as required by R.C. 163.09, it has been suggested by one appellate court, and we agree, that such provision is directory. *Biery v. Lima* (1969) 21 Ohio App. 2d 154. Further, inasmuch as no answer was filed to the amended petition, the time for trial did not commence from the date of filing of the initial answer and thus the trial on January 19, 1989 did not violate the statute as claimed. The fifth assignment of error is overruled.

Even the majority of this court has concluded that prejudicial error intervened below in that the judgment is against the manifest weight of the evidence and a new trial should be granted as set forth in the disposition of the cross appeal. However, since the trial was to a jury and Ohio Constitution Article IV. Sec. 3(B)(2) requires a reversal on the weight of the evidence to be concurred in by all three judges, it follows that since Judge Lawrence Grey has declined to concur, the judgment must be affirmed.

*Judgment affirmed.*

HARSHA, J., concurs in judgment.

GREY, J., concurring in part and dissenting in part.

I agree with overruling all of Atkins' assignments of error, but I dissent on sustaining the village's cross assignment of error.

My primary objection is that the claim of error was raised in this court for the first time. An appropriation case is like any other, and if the claim of error is not raised it is waived. Clearly, Atkins' testimony as to damage to the residue was not presented in the proper form, but that is not the issue here. The village did not object to it, and now relies on this as a ground for reversal.

Atkins' testimony as to the damage to the residue was relevant under the definition in Evid. R. 401,

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

This evidence, however, was also inadmissible under the well established standards for proof in an appropriation case. But because there was no objection, this ordinarily inadmissible evidence was in fact admitted. The majority opinion states that because it was not admissible, it was not evidence!

We are in danger of establishing a very dangerous precedent here. In future appropriation cases if the owner witness offers testimony about his damage, without establishing by foundation testimony of the value of the land before the taking and the value after, it would be foolish for opposing counsel to object. He has guaranteed built in reversible error if the jury's verdict is not to his liking.

It is well established that this court cannot intervene and reverse and remand for a new trial where the trial court has not been given the opportunity to correct any claimed error or defect in the proceedings.

"An appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *Verplatse v. Verplatse* (1984), 17 O. App.3d 99."

Nor does this reach the status of plain error. That term is defined in *State v. Craft* (1977), 52 Ohio App.2d 1,

"A 'plain error,' committed by a trial court and reviewable on appeal, is an obvious error which is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings."

The verdict and judgment in this case does not threaten public confidence in judicial proceedings.

There is no question that a person giving opinion testimony under Evid. R. 701 or 702 must establish under Evid. R. 703 a foundation of underlying facts upon which that opinion is based. The reasons for this requirement are set out in the quoted portion of *Masheter v. Kebe, supra,* and they are very good reasons. What constitutes a sufficient foundation for opinion testimony is often contested at trial and on appeal. See, for example, *State v. Morris,* (1982), 8 Ohio App.3d 12, or *Camden v. Miller* (1986), 34 Ohio App. 3d 86.

In this case, the lack of foundation was not challenged. Atkins' testimony was admitted without objection, so the trial court was given no opportunity to rule on its inadmissibility. The claim of error was not preserved in the record and is being raised for the first time in this court. To reverse the judgment of the trial court under these circumstances is, in my opinion, error on the part of this court.

Thus, I dissent.

---

[1] Both the original petition, the answer to such petition, and the amended petition erroneously describe the land owners as Donald C. Adkins and Helen Adkins. An amendment was allowed at trial to reflect the correct spelling, i.e. Donald C. Atkins and Helen Atkins.

[2] Prior to trial, the court permitted an amendment to attach the resolution to the amended petition. We assume such resolution exists but it is not in the record.

[3] The descriptions of the permanent and temporary easements were reversed in the amended petition but amendment to correct the error was allowed at trial. The take for the permanent easement was .1423 acres and the temporary easement was .0711 acres.

[4] Immediately prior to trial, and outside the presence of the jury, Donald C. Atkins testified on direct and cross-examination. The tenor of his testimony was that he had retained present counsel only the night before and expert witnesses could not be obtained. He testified that in late November, 1988 a pretrial was held which he attended and he was advised to seek new counsel as his former counsel had withdrawn on October 24, 1988.

[5] Neither party introduced any exhibits or documentary evidence. While a drawing of appellants property was made on a blackboard and referred to at trial, it is, of course not before this court. An exhibit in some form as to the outline of appellant's property, with roads and other features shown, and the location of the proposed taking would have been desirable for effective appellant review as well as use at trial.

[6] With all due respect, the dissenting opinion appears to be erroneously focusing upon the admissibility of the "damage" testimony by Mr. Adkins, rather than the pivotal issue of sufficiency of the evidence to support the judgment. As noted in the majority opinion the evidence was before the jury for what it was worth. However, the probative value was minimal to the jury under the jury instructions in determining compensation for the fair market value of the land taken, and the damage to the residue by a determination of the loss in value for the residue after the appropriation, which necessarily requires a determination of the fair market value of the whole before the take. Conclusionary "damage" testimony provides practically no assistance to the jury in making the required valuation determinations. The dissent's concern that new issues are being improperly raised for the first time on appeal is misplaced. The controlling issue is weight of evidence not admissibility of evidence. Admittedly, a motion for a new trial on that ground was not filed by cross-appellant in the court below. While this was once required, see *Spradlin v. City of Canton* (1961), 171 Ohio St. 531, in 1945 such requirement was abrogated by the General Assembly by enacting G.C. 11576-1 in House Bill No. 170, 121 Ohio Laws 366. G.C. 11576-1 now appears in R.C. 2321.01 and reads as follows:

"A motion for a new trial is not necessary as a prerequisite to obtain appellate review of the sufficiency or weight of the evidence submitted to the trial court where such evidence to be considered appears as a part of the record filed in the appellate court.

"This section applies to any action or proceeding pending in the courts on October 27, 1949."

In *Walker v. David Davis, Inc.* (1973), 34 Ohio App. 2d 139, it was held such section is in force since "[T]here is nothing to the contrary either in the civil rules or appellate rules." Thus appellate review of the sufficiency of evidence to support the judgment is an exception to the general rule that appellate issues must have been raised initially in the trial court.